James **SAYLOR**, Administrator of the Estate of Jimmy Davis Saylor, Deceased, et al., Appellants,

v.

**E. H. HALL**, Appellee.

Court of Appeals of Kentucky.

March 2, 1973.

Rehearing Denied May 18, 1973.

Alan T. Slyn, Borowitz, Slyn & Russell, Louisville, for appellants.

Marshall B. Hardy, Jr., Louisville, for appellee.

Charles M. Leibson, Louisville, for American Trial Lawyers Assn.

William Kiel, Louisville, for Fruehauf Corp.

Frank J. Whalen, Jr., Spencer, Whalen & Graham, Washington, D. C., for The American Institute of Architects, National Society of Professional Engineers, Consulting Engineers Council, Associated General Contractors of America, Kentucky Society of Architects, AIA, Kentucky Society of Professional Engineers, Consulting Engineers Council of Kentucky, Kentucky Highway Division, AGC, Greater Lexington Chapter, AGC, AGC of Western Kentucky, and Louisville Chapter, AGC.

Robert A. Metry, Louisville, for Homebuilders Assn. of Kentucky.

John P. Sandidge, Louisville, for Collins Const. Co.

REED, Justice.

Although we have been aided by the excellent and exhaustive briefs filed by various interested groups that have appeared by our permission as amici curiae in this appeal, it now appears that the issue for decision in this case is narrower than the flow of the arguments would indicate. The general problem argued is the constitutionality (state and federal) of two Kentucky statutes that undertake to regulate and control the institution of actions against builders of houses and against those who design, plan, supervise, inspect, or construct improvements to real property. The case before us, however, is a suit by

injured third-party tenants alleging actionable negligence against the owners of a house who leased it to them and against the builder of this house whose work of construction had been completed and accepted by the owner. Our consideration of the case has caused us to conclude that the single determinative issue is whether these statutes may be constitutionally applied in this jurisdiction to bar the claim of a plaintiff in the legal posture of the present plaintiffs against a defendant in the legal posture of the defendant builder. For the reasons later discussed, we hold that, under applicable provisions of the Constitution of Kentucky, as judicially construed, these statutes cannot be applied to bar the claims that are the subjects of this action. Our holding, however, is confined to that specific decision. We decline to formulate any rule of constitutionality "broader than is required by the precise facts to which it is to be applied." (Per dissent of Mr. Justice Rehnquist in Roe et al. v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 decided January 22, 1973).

The operative facts are: In May 1955, the defendant, E. H. Hall, a builder, completed construction of a house on a lot he owned. Shortly thereafter, he sold the house and lot to the defendants, Thomas and Kathlyn Johnson, who thereafter owned and controlled the property. The house was originally occupied in June 1955, when the improvements had been substantially completed. In July 1969, James Saylor and his wife rented the property from the Johnsons and moved in. The Saylors had two children, Jimmy, then age 6, and Marvin, then age 4. Four months later, while the Saylor children were sitting on the floor watching television, a stone fireplace and mantel located in the room collapsed; Jimmy was crushed to death, and Marvin was severely injured.

In July 1970, within one year of the date of the accident, James Saylor as personal representative of his dead son, Jimmy, and Marvin, through his father, James, as next friend, instituted this lawsuit against the Johnsons and Hall. The suit alleged that Jimmy's death and Marvin's personal injuries were caused by the negligence of Hall, the builder, and by the negligence of the Johnsons who had leased the property to the Saylors. The defendants filed motions for summary judgment. The evidentiary material produced demonstrated that the plaintiffs had evidence that Hall installed the braces on the mantel in a negligent and unworkmanlike manner, and that the Johnsons knew or should have known of the dangerous but hidden condition created, and yet did not correct it or warn the Saylors of its existence. The trial judge did not reach the merits concerning the triability of the lawsuit. He decided the action against Hall, the builder, was barred by limitations because of the provisions of KRS 413.120(14) and KRS 413.135. From this order of dismissal of the builder, the plaintiffs appealed, after meeting the procedural requisites for such action.

In 1964, the General Assembly carved out for different treatment from other actions for personal injuries, those where the claim was against "the builder of a home or other improvements." KRS 413.-120(14). This statute provides that such an action must be commenced within five years after the cause of action accrues, and [the] "cause of action shall be deemed to accrue at the time of original occupancy of the improvements which the builder caused to be erected." *Ibid.*

The builder's potential liability was again the subject of legislative concern in 1966 when a more expansive statute, KRS 413.135, was enacted. It provided in part that no tort action for *personal injuries or for wrongful death arising out of "deficiency"* in construction of any improvement to real property could be brought against the builder after the expiration of five years following the "substantial completion of such improvement." Both of these statutes were expressed as parts of the general chapter on limitations of actions.

The plaintiffs argue that the application of these two statutes to bar their claims violates the Constitution of the United States and particularly the Due Process and Equal Protection Clauses of the Fourteenth Amendment. They also assert application of the questioned statutes to their causes of action is prohibited by numerous sections of the Constitution of Kentucky. We find it necessary, however, to consider only the effect of sections 14, 54, and 241 of the Kentucky Constitution as they have been judicially construed.

The defendant points out that substantially similar statutes have been adopted in 31 other states, and have been held valid by each state court of last resort that has considered them except in one instance. The defendant's arguments are: that the legislature may abolish old common-law rights of action or create new ones; that it may enact statutes of "ultimate repose"; and that it may reasonably and rationally classify legal areas to be protected in order to achieve a permissible legislative objective in the manner provided by the concerned statutes. Nevertheless, the defendant concedes, tacitly if not explicitly, that the Kentucky legislature has no constitutional power to extinguish common-law rights of action for negligence, but counters with the assertion that no such right of action for negligence against a builder existed at the time the questioned statutes were enacted, and, therefore, the legislature was free to act. Here, in our judgment, lies the heart of the issue to be decided. If the defendant is wrong in his assertion of the nonexistence of a right of action for negligence against the builder under the circumstances present when the statutes were passed, then the application of these statutes to the plaintiff's claim is constitutionally impermissible in this state.

Constitutional attacks against substantially similar statutes have failed in Arkansas, Oregon, New Jersey and Washington. In Illinois the state Supreme Court invalidated the same statutory approach with a holding that the statutes violated a provision of that state's constitution in which local or special laws or special or exclusive immunities and franchises were prohibited. Skinner v. Anderson, 38 Ill.2d 455, 231 N. E.2d 588 (1967). The Illinois court in Skinner declared that the classification, which favored construction contractors, architects, and engineers as contrasted with owners of structures and suppliers of construction materials, was invidious because it excluded from its insulation from liability these many other persons similarly situated so far as potential liability for negligence arising out of construction activities was concerned. The New Jersey Supreme Court categorically rejected this reasoning and specifically found the statutory classification reasonable, rational and sufficiently broad. Rosenberg v. Town of North Bergen, 61 N.J. 190, 293 A.2d 662 (1972).

The arguments advanced by the plaintiffs that the questioned statutes violate the federal constitutional Due Process and Equal Protection Clauses of the Fourteenth Amendment were directly implicated in Carter v. Hartenstein, 248 Ark. 1172, 455 S.W.2d 918 (1970). In that case, however, the Supreme Court of Arkansas upheld the validity of substantially similar statutes; the United States Supreme Court dismissed an appeal from the decision "for lack of a substantial federal question." See 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800. The same decision was reached in the Oregon case of Joseph v. Burns, Or., 491 P.2d 203 (1971), and in Rosenberg v. Town of North Bergen, supra. The latest expression by a state supreme court also sustains validity of this type of statute in this federal context. See Yakima Fruit v. Central Heating, 81 Wash.2d 528, 503 P.2d 108 (1972).

It seems to us that the decisions of our sister states all are based upon the constitutional construction made by the U. S. Supreme Court in Silver v. Silver, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). There, the Supreme Court held that the federal Constitution did not forbid the creation of new rights or the abolition of old

ones recognized by the common law to attain a permissible legislative objective; hence, Congress had the power to abolish "old [rights] recognized by the common law." Without compounding the confusion engendered by the debate concerning "procedural due process" vs. "substantive due process" and without exploring the closeness of the analogy between state constitutional provisions prohibiting "special laws" and the federal "Equal Protection Clause," we have concluded that our sister states herein cited have construed their state constitutions to be equivalent to the federal Constitution so far as legislative power to abolish existing common-law rights of action is concerned. Therefore, these state jurisdictions experience no difficulty in validating compulsory workmen's compensation laws and automobile guest-passenger statutes.

Our state Constitution, however, has been held to prohibit the legislative branch from abolishing common-law rights of action for injuries to the person caused by negligence or for death caused by negligence. The construction of the questioned statutes by the federal intermediate appellate court for this area does not consider the effect of the Kentucky Constitution on their validity. Lee v. Fister, 413 F.2d 1286 (C.A.6 1969).

Section 14 of the Constitution of Kentucky states:

"All courts shall be open and every person, for an *injury* done him in his lands, goods, *person* or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." (italics supplied).

This section was held to apply to the legislative branch of government as well as to the judicial in Commonwealth v. Werner, Ky., 280 S.W.2d 214 (1955). Section 54 of the same Constitution states:

"The General Assembly shall have no power *to limit* the amount to be recovered for *injuries resulting in death,* or for *injuries to person* or property." (italics supplied). The Kentucky Constitution in Section 241 states:

"Whenever the death of a person shall result *from an injury inflicted by negligence* or wrongful act, then, *in every such case,* damages may be recovered for such death from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom it belongs; and until such provision is made the same shall form part of the personal estate of the deceased person." (italics supplied).

This court construed section 241 in 1911 to mean that ". . . it is not within the power of the legislature to deny this right of action. The section is as comprehensive as language can make it. The words 'negligence' and 'wrongful act' are sufficiently broad to embrace every degree of tort that can be committed against the person. . ." Britton's Adm'r v. Samuels, 143 Ky. 129, 136 S.W. 143.

Kentucky has no guest-passenger automobile statute, not because of legislative inaction, but because such a statute was voided as violative of our state Constitution. In the decision, section 54 played a prominent part. In Ludwig v. Johnson et al., 243 Ky. 533, 49 S.W.2d 347 (1932), this court struck down a statute that prohibited recovery by a guest passenger in an automobile against the owner or host driver for personal injuries or death resulting from the driver's negligence. Recovery was permitted by the statute only in the instance of intentional conduct. The court's holding was: "The [automobile guest-passenger] statute under consideration violates the spirit of our Constitution as well as its letter as found in sections 14, 54 and 241. It was the manifest purpose of the framers of that instrument to preserve and perpetuate the common-law right of a citizen in-

jured by the negligent act of another to sue to recover damages for his injury."

The defendant builder concedes that our legislature cannot abolish a common-law right of action for negligence. It is his contention, however, that at the time the questioned statutes were enacted, there was no existing right of action for negligence in this state where the plaintiff was a third party and the defendant was a builder whose work had been completed and accepted by the owner with whom he had contracted.

We have not found any cases in Kentucky decided during the period involved in which builder liability to third parties for negligent construction was considered nor has the defendant cited us any such cases. Defendant appears to rely on the proposition that, historically, builders had no such liability. This requires a consideration of the relevant history to determine what the situation applicable to the parties to this appeal was at the time the questioned statutes were enacted in 1964 and in 1966.

We will not add to the reams of material that have been poured out by legal scholars on the erroneous interpretation of the 1842 English case of Winterbottom v. Wright, 152 Eng.Rep. 402, that generated the steadily eroded "general rule" that there was no liability of a contracting party to one with whom he was not in "privity." An interesting discussion of that history may be found in Prosser, Handbook of the Law of Torts, section 93, page 622 (4th Edition 1971) and in 164 A.L.R. pp. 569–602. See also an annotation styled, "Contractor— Liability to Third Person," 58 A.L.R.2d 869 (1958). The steady erosion of the rule that a builder was not liable to any third person once the structure was completed and accepted by the owner is carefully traced by Prosser in his text just cited at section 104, p. 680. Manufacturers of chattels enjoyed the immunity claimed by builders until Cardozo's landmark opinion in McPherson v. Buick Motor Company, 217 N.Y. 382, 111 N.E. 1050 (1916). In

1957, New York applied the McPherson approach allowing recovery by an injured third party against a builder where a latent defect created by his negligence was involved in Inman v. Binghampton Housing Authority, 3 N.Y.2d 137, 143 N.E.2d 895. Section 385 of the first Restatement of the Law of Torts was quoted with approval by the Minnesota Supreme Court in Murphy v. Barlow Realty Company, 206 Minn. 537, 289 N.W. 563 (1939), when that court held that where a builder through negligence created a trap, he must respond to injured persons for his default. The requirement of a "latent defect" has been criticised. See 12 Vand.L.Rev. pp. 712–715. We, however, need not consider the current status of the substantive rule; the problem is the state of the law in Kentucky when the questioned statutes were enacted.

Although the defendant cites the 1929 Kentucky case of Payton's Adm'r v. Childers' Electric Co., 228 Ky. 44, 14 S.W.2d 208, as authority demonstrating that this state adopted the McPherson approach only so far as suppliers of chattels were concerned and refused to extend the McPherson doctrine to installers of chattels, we do not so understand that decision. The plaintiff had abandoned efforts to plead a cause of action against one of two defendants in the trial court; the other defendant, however, was alleged to have constructed, reconstructed, and made repairs on an electric crane in a negligent manner as a result of which the plaintiff, an employee whose employer had contracted for the repairs, was injured. This court applied the McPherson rule and held that the plaintiff had pleaded a sufficient cause of action.

In 1956, this court decided the case of C. D. Herme, Inc. v. R. C. Tway Company, Ky., 294 S.W.2d 534. In that opinion, the court stated: "The ancient so-called 'general rule' of the manufacturer's non-liability for negligence to persons with whom he has no contractual relation, followed by this Court in the Olds Motor case [Olds

Motor Works v. Shaffer, 145 Ky. 616, 140 S.W. 1047 (1911)], has been abandoned by substantially all modern authorities . . . Upon reconsideration, we now determine also to abandon it and we hereby expressly overrule the Olds Motor case. We think the proper rule is as stated in the Restatement of the Law of Torts, section 395." That same Restatement then also contained the following rule of law, which today is expressed as section 385 of the Restatement of the Law of Torts, Second:

"One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others."

Prosser says: "It is now the almost universal rule that the contractor [builder] is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him, but also when the work is negligently done." In support of his analysis, he cites the following cases that were decided before 1964: Moran v. Pittsburgh-Des Moines Steel Company, 166 F. 2d 908 (C.A.3 1948), cert. denied 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770; Hale v. Depaoli, 33 Cal.2d 228, 201 P.2d 1 (1948); Hunter v. Quality Homes, Del., 68 A.2d 620 (1949); Wright v. Holland Furnace Company, 186 Minn. 265, 243 N.W. 387 (1932). See Prosser, Handbook of the Law of Torts, section 104, p. 681 (4th Ed. 1971).

■ Returning now to the principle that we discussed in the opening of this opinion, we conclude that it is unnecessary in this case to delineate or define the outer limits of a builder's liability in 1964 in Kentucky to a third party injured by the negligence of the builder whose work had been completed and accepted by the owner. We are satisfied that, under the precise facts of this case, the builder at that time was at the least subject to liability to third parties for negligent construction, though completed and accepted, that created a latent defect in a stone mantel and fireplace in a home where innocent third parties on the property could foreseeably be injured by such dangerous and concealed condition. Therefore, we hold that there was an existing right of action in this state for the type of negligence claimed in this lawsuit when the questioned statutes were enacted.

The legislature's power to enact statutes of limitation governing the time in which a cause of action must be asserted by suit is, of course, unquestioned. In this state, however, it is equally well settled that the legislature may not abolish an existing common-law right of action for personal injuries or wrongful death caused by negligence. KRS 413.120(14) provides that an action for personal injuries caused by the negligence of the builder of a home must be brought within five years, and the "cause of action shall be deemed to accrue at the time of original occupancy of the improvements which the builder caused to be erected." KRS 413.135(1) provides, in part, that no action "sounding in tort" resulting from "deficiency" in the construction of any improvement to real property or "for injury to the person or for wrongful death arising out of any such deficiency," shall be brought against the builder after the expiration of five years following "the substantial completion of such improvement." In our view the application of these statutory expressions to the claims here asserted destroys, pro tanto, a common-law right of action for negligence that proximately causes personal injury or death, which existed at the times the statutes were enacted. The statutory expressions as they relate to actions based on negligence perform an abortion on the right of action, not in the first trimester, but before conception.

The right of action for negligence proximately causing injury or death, which is constitutionally protected in this state, requires more than mere conduct before recovery can be attempted. Recovery is not possible until a cause of action exists. A cause of action does not exist until the conduct causes injury that produces loss or damage. The action for negligence evolved chiefly out of the old common-law form of action on the case, and it has always retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. See Prosser, Handbook of the Law of Torts, section 30, page 143 (4th Edition 1971). Indeed, the Supreme Court of New Jersey realized the relevance of this consideration in the recent case cited by the defendant builder in support of his argument on another phase of the case. See Rosenberg v. Town of North Bergen, 61 N.J. 190, 293 A.2d 662, 666 (1972).

"It is not within the power of the legislature, under the guise of a limitation provision, to cut off an existing remedy entirely, since this would amount to a denial of justice, and, manifestly, an existing right of action cannot be taken away by legislation which shortens the period of limitation to a time that has already run." 51 Am.Jur.2d, Limitations of Actions, section 28, page 613. Surely then, the application of purported limitation statutes in such manner as to destroy a cause of action before it legally exists cannot be permissible if it accomplishes destruction of a constitutionally protected right of action.

We do not consider decisions construing our limitations-of-actions statutes governing suits for fraud as persuasive in resolving the issue posed in this case. In the first place, none of them considers the constitutional permissibility of applying those statutes in the context presented here. In the second place, the perpetration of fraud immediately invades a plaintiff's protected legal interests and, in that sense, immediately produces "injury," while in this case the protectable legal interests of the plaintiffs were not invaded until long after the conduct occurred. Finally, to conceive of fraud as the proximate cause of wrongful death in the constitutional context presented is indeed difficult.

We are aware of the various considerations of social policy that have been debated by the contending parties. Potential liability of builders is extended in time. Nevertheless, injured consumers are entitled to the same legal protection as others are afforded in instances of faulty work that produces dangerous conditions. The passage of time operates to the disadvantage of the injured plaintiff. Proof is harder to come by; the issue of proximate cause vis-a-vis remote cause makes the plaintiff's prospect of recovery more difficult. These pragmatic considerations, however, are not actually relevant to the confined holding made in this opinion.

In our judgment KRS 413.120(14) and KRS 413.135 cannot be applied to bar the plaintiffs' claims in this action. Such application is constitutionally impermissible in this state because it would violate the spirit and language of Sections 14, 54, and 241 of the Constitution of Kentucky when read together.

The judgment is reversed for further proceedings consistent herewith.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur, except STEPHENSON, J., who dissents.