291 So.2d 306

**BAGBY ELEVATOR AND ELECTRIC COMPANY, INC., a corporation**

v.

**Terry McBRIDE, a Minor Ten Years of Age, Who Sues By and Through His Mother, Mrs. Minnie McBride, as Next Friend.**

**Terry McBRIDE, a Minor Ten Years of Age, Who Sues By and Through His Mother, Mrs. Minnie McBride, as Next Friend**

v.

**BAGBY ELEVATOR AND ELECTRIC CO., INC., a corporation.**

**SC 204, SC 204X.**

Supreme Court of Alabama.

Feb. 14, 1974.

Rehearing Denied March 28, 1974 in No. SC 204.

Jones, McEachin, Ormond & Fulton, Tuscaloosa, for appellant.

Edward F. Morgan, Tuscaloosa, for appellee.

C. V. Stelzenmuller and D. Frank Davis, Birmingham, for Alabama Branch, Associated General Contractors of America, amicus curiae.

JONES, Justice.

The constitutionality and applicability, vel non, of Act No. 788, Acts of Alabama, 1969, p. 1418—Title 7, § 23(1), Code of Alabama, 1940 (Recomp.1958)—are dispositive of this appeal. Act No. 788 provides:

"Be It Enacted by the Legislature of Alabama:

"Section 1. All actions against persons who performed or furnished the design, planning, supervision or construction of improvements on real property, whether based on contract or tort, for damages arising out of any act or omission of such persons in the design, planning, supervision or construction of such improvements, must be commenced within four years after the final completion of such improvements, and not afterwards. Provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than seven years after such act or omission.

"Section 2. The provisions of this Act are severable. If any part of the Act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.

"Section 3. All laws or parts of laws which conflict with this Act are repealed.

"Section 4. This Act shall take effect immediately upon its passage and approval by the Governor, or upon its otherwise becoming law; but it shall apply only to causes of action arising subsequent to the effective date of this Act.

"Approved September 12, 1969.

"Time: 4:57 P.M."

The pertinent facts are: The final completion of improvements, as contemplated by the Statute, occurred in 1959; the Act became effective September 12, 1969; plaintiff, age 10, was injured November 3, 1969; and suit was filed March 27, 1970.

Appellant, Bagby Elevator and Electric Company, sought to invoke the seven-year provision of the Act by requesting the general affirmative charge. The lower court overruled the motion and we affirm.

We first consider the contention advanced by appellee that the Act is unconstitutional as violative of Section 45 of the Alabama Constitution of 1901, which provides:

"The style of the laws of this state shall be: 'Be it enacted by the legislature of Alabama,' which need not be repeated, but the act shall be divided into sections for convenience, according to substance, and the sections designated merely by figures. *Each law shall contain but one subject, which shall be clearly expressed in its title*, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length." (Emphasis added.)

The pertinent portions of this section contain two component parts: First, it limits legislation to a single subject; second, it requires that this single subject be clearly expressed in the title. Thus, a statute such as the one in question may be attacked as violative of either or both of these constitutional admonitions. See 1A Sutherland, Statutes and Statutory Construction, § 18.-07, at 29 (C. Sands ed., 1972). This Court, in dealing with the requirement that the subject be "clearly expressed in the title," has identified three objectives of Section 45:

"The object of the constitutional provision has been held to be three fold, first, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, and in order that they may have the opportunity of being heard thereon, by petition or otherwise, if they shall so desire; second, truly to inform members of the legislature who are to vote upon the bill, what the subject of it is so that they may not perform that duty, deceived or ignorant of what they are doing; and third, to prevent the practice of embracing in one bill several distinct matters, none of which, perhaps could singly obtain the assent of the legislature, and then procuring its passage by a combination of the minorities in favor of each of the measures, into a majority that will adopt them all. Lindsay v. United States Savings & Loan Ass'n, 120 Ala. 156, 24 So. 171, 42 L.R.A. 783; Walker v. Griffith, 60 Ala. 361." State v. Hester, 260 Ala. 566, 72 So.2d 61 (1954).

The title to the Act is as follows:

"Act No. 788        H.899—Hill

*"AN ACT*

"To regulate further the time within which actions against persons who performed or furnished the design, planning, supervision or construction of improvements on real property, whether. based on contract or tort, for damages

arising out of any act or omission of such persons in the design, planning, supervision, or construction of such improvements must be commenced."

The title seems to indicate rather clearly that the Act to follow is a traditional statute of limitation. That Act No. 788 is not of this type is demonstrably clear from its express wording which establishes a different event to begin the running of the statute—the completion of the improvements rather than the accrual of the cause of action. Furthermore, the appellant points out:

"The courts of Alabama see a distinction between barring the *remedy only* [i. e., the traditional statute of limitations] as opposed to barring the *cause of action*. The statute of limitation under consideration here is different from other statutes of limitation in the same chapter of the Code . . . Where the regular or usual statutes of limitations affect only the remedy, the improvement statute affects the right to bring the cause of action or to maintain suit on a cause of action."

The point is even more forcefully made in the brief submitted by the Alabama Branch, Associated General Contractors of America, appearing as amicus curiae:

"Section 23(1) is not an ordinary statute of limitations. The ordinary statute of limitations begins to run from the date of the completion of the improve-whereas section 23(1) runs from the date of the completion of the improvement. The ordinary statute of limitations affects the time limit in which an action must be commenced. *Section 23(1) affects whether a substantive right of action exists at all. It affects substantive rights and duties themselves, and the resulting question of substantive liability. It is not merely a procedural*

bar to the remedy for a substantive liability." (Emphasis Added.)

Thus, the issue becomes whether the Act contained one subject which was so "clearly expressed in its title," as to satisfy the standards set by this Court, i. e., to fairly apprise the people of subjects being considered and to inform members of the legislature so that they may not perform their duty deceived or ignorant of what they are doing. (There is no question of "logrolling", so the third requirement, of course, does not apply.) There are many cases on this point and the results are varied. This Court has stated that it is difficult to lay down a fixed and definite rule that will mark the line between what is and what is not violative of this Section, Lovejoy v. City of Montgomery, 180 Ala. 473, 61 So. 597 (1913), and that each case must necessarily rest upon its own bottom. Adjudicated cases serve as illustrations only, and are helpful, but are only controlling when they are *closely* analogous. Spurlock v. J. T. Knight & Son, 246 Ala. 33, 18 So.2d 685 (1944).

Although such closely analogous cases may exist, none has been cited in brief nor has the Court found any. It seems clear, however, that when the title purports to establish a traditional statute of limitations, but the body in fact does something different, not merely in degree but in kind, by declaring, in effect, that no substantive right to bring an action exists 7 years after a certain event, then the subject has not been clearly expressed and the purposes of the title as established by this Court have not been met.[1] Thus, as applied to causes of action accruing more than 7 years after completion of the improvement, the Act, by virtue of its defective title, violates Section 45 of the State Constitution.

The other point of attack on Act No. 788 is that the body of the Act must be limited to one subject. This Court has es-

1. For example of a law complying with Section 45 as to this aspect of its title, see Act

No. 766, Acts of Alabama, 1953, p. 1027 (Medical Malpractice).

tablished a policy of liberality when dealing with Section 45 so as not to hamstring the legislature. An expression of this liberal policy is found in Knight v. West Alabama Environmental Improvement Authority, 287 Ala. 15, 246 So.2d 903 (1971). There it was urged that Sections 3, 8(7) and 8(9), authorizing corporations created under Act No. 1117 to render financial assistance to industries and private corporations, and Section 8(10), authorizing corporations created under the Act to engage in work of watershed improvement, were not expressed in the title of the Act, thus placing the Act in violation of Section 45 of the Alabama Constitution of 1901.

This Court held in *Knight* that the title expressed a general idea or subject—the study, control, abatement, and prevention of water, air, and general environmental pollution—and that all matters covered in the challenged provision relate to or are cognate to the general subject as expressed by the title. This holding was obviously correct under the established case law and the facts of that case. The sections challenged did relate to the overall subject of the Act. The title is not required to be an index or a table of contents of all the provisions of the Act so long as all provisions do relate to the subject. Of course, if the subject is stated in broad terms, as was the case in *Knight* then naturally a broader range of provisions will relate to the subject.

The title to Act No. 788, however, is neither general nor broad. To the contrary, the words of the title are specific and narrow in scope: "To regulate further the time within which actions . . . must be commenced." The title denotes a law dealing merely with a procedural right—a statute of limitations—and not a statute eliminating a substantive right. The last phrase of Section 1 cannot be stretched by the most liberal interpretation to fit the "relate to" test since this seven-year provision in no way relates to the subject matter expressed in the title. The title indicates that the Act is to regulate the time within which an action may be brought, not to eliminate it altogether. The title purports to establish only a statute of limitations as that term is ordinarily employed. By the very words of the title, it is apparent that the Act to follow contemplates that a right of action exists which must be brought within a specified time. Nowhere in the title is there any indication that anything other than a statute of limitations is intended.

However liberal our policy may be in interpreting Section 45, when the Court is certain that the Section is violated, it is mandatory that the offending portion of the Statute be declared unconstitutional. City of Mobile v. Louisville & N. R. Co., 124 Ala. 132, 26 So. 902 (1899). In an extremely well written comment on the type of statute here under review, the following analysis is found:

"The elusive nature of these statutes becomes apparent when those actions 'accruing' after the statutory period are considered. In barring actions which have yet to accrue, these statutes are unique, since a statute of limitations proceeds on the theory that a right of action exists, with the limitation defining the period for pursuit of judicial redress. For a statute to bar an action which has not accrued is anomalous; such a statute does not merely limit the remedy, but bars the right of action from ever coming into existence. Once a right of action vests, due process requires that some remedy be afforded, but where the right of action never vests there is no deprivation of property without due process of law. A right of action for a tort which may happen in the future is not property, and may be abrogated by the legislature. The legislatures by enacting these statutes simply abolished all right of action against architects and builders in certain instances. Thus, as to those claims against architects and builders accruing before the statutory period has run, the

statutes may act as statutes of limitations, and limit only the remedy. But as to claims accruing after the statutory period has run, the enactments are statutes of limitations in form only, while in essence they are substantive legislative acts defining rights—i. e., that no right of action against the architect or contractor exists at all." Comment, Limitations of Action Statutes for Architects and Builders—Blueprints for Non-Action, 18 Cath.U.L.Rev. 361 (1969).

The last sentence in the above quote describes Act No. 768. The seven-year clause is clearly not a statute of limitations as applied in this case; it operates as a grant of immunity because its effect is to prohibit the injured person from recovering no matter how diligent he was in pressing his claim. (Here the suit was filed well within six months of the injury and the time the cause of action arose.)

The operation of the seven-year clause as a grant of immunity is even more apparent when such construction is analyzed and pursued to its logical conclusion. Accordingly, this grant of immunity would be instantaneous upon passage of the Act for any improvement over 7 years old. In such event even if a person were injured one day after the statute went into effect, he could not bring an action; whereas, had he been injured one day before, he could have maintained an action. How can such an immediate grant of immunity be equated to a statute of limitations? Clearly it cannot be and just as clearly the Act does have two subjects, only one of which is expressed in the title. As applied in this case, the seven-year provision is a limitation in form only; in substance and effect, it is a grant of immunity—the abolition of a substantive right.

As indicated above, there is a difference in these two aspects of the Act which is more than a matter of degree—it is a difference in kind. Alabama cases

bottom a statute of limitations on a policy of repose and they rest on the presumption that meritorious claims will not be allowed to slumber until human testimony is lost or human memory fails. See Howell & Graves v. Curry, 242 Ala. 122, 5 So.2d 105 (1941). The point is well made in the Comment referred to above:

"Limitation of actions statutes implement two basic policies of the law—to promote stability in the affairs of men and to avoid uncertainties and burdens in defending stale claims. The primary concern is fairness to the defendant, who should not be forced to defend when evidence has been lost, witnesses have died, and memories have faded. The policies are implemented by compelling assertion of legal rights within a reasonable time. A party failing to act within that time forfeits his right to a judicial remedy. Thus, plaintiff's delay is the traditional justification for the implementation of these policies.

" . . .

"When applied to those claims arising after the statutory bar takes effect, the architects' and builders' statutes squarely conflict with the traditional rule commencing the running of a limitation period at the time plaintiff can first maintain a suit. They vary from the usual statute in that they do not rely upon the justification of plaintiff's delay. Although this justification often may have been without practical substance, the growing use of a discovery test evidences a legislative and judicial re-evaluation of the type of justice a statute of limitations should afford. Where a limitation bars an action before it accrues, even the purely legal justification fails.

"Ostensibly, there is little difference, pragmatically, between barring the accrued but unknowable claim and barring an unaccrued right of action altogether. The policy against stale evidence might

be asserted as sufficient justification per se in a compelling factual situation and need not depend on plaintiff's delay. These arguments may warrant abolition of certain unaccrued rights of action in deference to protecting courts from insufficient evidence and protecting defendants from suits long after their negligent acts. But they do not justify straining statute of limitations theory to the point of absurdity. A limitation affects the time for exercise of a right and cuts off a remedy within some reasonable time after the right comes into existence; using a limitation to abolish a right altogether only serves to devitalize the theory, the policies, and the law of limitation of actions."

■ In summary, it is clear that the Act violates Section 45 in two ways: The title does not clearly express the subject of the Act; and the body of the Act in reality contains two subjects—one, a statute of limitations, and the other, a provision abolishing certain rights of action against architects and builders. For these reasons, we hold that the last phrase of Section 1 of the Act (the seven-year provision) is unconstitutional and void. See, e. g., Sweet v. Wilkinson, 252 Ala. 343, 40 So.2d 427 (1949); Ham v. State, 156 Ala. 645, 47 So. 126 (1908); and Mayor, etc. of Ensley v. Cohn, 149 Ala. 316, 42 So. 827 (1907).

Since under the facts of this case the defendant's request for the general affirmative charge necessarily sought to invoke only the seven-year provision of the Act, we pretermit consideration of the constitutionality of the remaining portion of the Act including its retrospective application.

Affirmed.

FAULKNER, J., concurs.

HEFLIN, C. J., concurs specially.

HARWOOD, J., with whom BLOODWORTH, J., joins, concurs specially.

MERRILL, J., with whom COLEMAN, J., joins, dissents.

MADDOX, J., with whom McCALL, J., joins, dissents.

HEFLIN, Chief Justice (concurring specially):

I concur in the result that the judgment of the trial court is due to be affirmed. I further agree with Justices Harwood, Bloodworth, Jones and Faulkner that the concluding proviso of Section 1 of Act 788, 1969 Acts of Alabama, p. 1418, violates Section 45 of the Constitution of 1901.

The title to the act clearly reflects an intention to establish a statute of limitations in the traditional and procedural sense. The language of the body of the act deals primarily with a substantive matter, that being the creation of an absolute immunity against suits after the passage of certain periods of time.

It appears to me that the 4-year limitation in the tort context here applicable is likewise offensive to the same constitutional prohibition in that such provision is not a statute of limitations but, instead, prescribes an immunity against suits. The "six months following discovery" saving clause does not of itself render this four year provision a procedural period of limitation under the tort context here applicable for the reason that these two provisions can not be intermeshed without vagueness, indefiniteness and uncertainty. See Mims v. Blanton, 272 Ala. 457, 131 So.2d 861 (1961); Marshall County Board of Education v. State, 252 Ala. 547, 42 So. 2d 24 (1949); Opinion of the Justices, 249 Ala. 88, 30 So.2d 14 (1947).

There may be circumstances under which the act does operate as a valid procedural statute of limitations. Perhaps as applied in a contract situation portions of the act could be upheld. See Wilkins v. Woolf, 281 Ala. 693, 208 So.2d 74 (1968);

Hamilton v. Autauga County, 289 Ala. 419, 268 So.2d 30 (1972). But in cases involving torts on third parties—the context of the instant case—I can see no field of constitutional operation.

Moreover, I would affirm because Title 7, Section 36, Code of Alabama, 1940 (Recompiled 1958) allows infants additional time to bring suits.

HARWOOD, Justice (concurring specially).

I concur in the result reached in the majority opinion that this judgment is due to be affirmed. The basis of my concurrence in the result reached is that in my opinion the concluding proviso of Section 1 of Act No. 788, 1969 Acts of Alabama, p. 1418, is violative of Section 45 of our Constitution of 1901.

Both Act No. 788 and Section 45 of our Constitution have been set out in the opinion prepared for this court by Justice Jones, and for the sake of brevity neither will be repeated in full in this concurring opinion.

It is obvious from a reading of the title to Act No. 788 that it pertains only to the time within which actions of the nature here being considered may be brought. In other words, so far as revealed by its title Act No. 788 purports to establish a statute of limitations in the traditional and procedural sense. There is nothing in the title indicating that in addition (as provided in the Act by the above mentioned proviso) a substantive right would be abolished after seven years regardless of when such substantive right came into being prior to the effective date of Act No. 788.

The proviso contained in the body of Act No. 788, and above referred to, reads:

" * * * provided further, that in no event may an action be commenced more than seven years after such act or omission."

Thus the proviso creates not a statute of limitations as indicated in the title to the Act, but is in essence a statute of absolute immunity as to causes of action originating seven years before the passage of the Act. In substance it frees architects and builders from all liability for negligence in the design or construction seven years after the completion of their work regardless of the effective date of the Act. It relates to a substantive right, and not to procedure. Thus the proviso differs from the purpose and subject matter of the Act as stated in its title, i. e., "to regulate further the time within which actions against persons [architects and builders] must be commenced."

I detect no warning or notice to the public or to the members of the legislature in this title that immunity from liability is also contained in the body of the bill as set forth in the proviso above mentioned. Nor do I consider that the proviso is merely subsidiary to the elements of the bill, nor cognate thereto, but in effect is a new, different, and material element of the bill as substantial as those portions of the bill mentioned in the title. See Allen v. Walker County, 281 Ala. 156, 199 So.2d 854; Wilkins v. Woolf, 281 Ala. 693, 208 So.2d 74; Knight v. West Alabama Environmental Imp. Auth., 287 Ala. 15, 246 So.2d 903.

While I am fully aware that it is of paramount importance that courts seek to sustain enactments of the legislature, a co-ordinate branch of government, and indulge every intendment in favor of validity of an act, nevertheless when it appears certain that Section 45 of our Constitution has been violated, any portion of an act not meeting the requirements of Section 45, it is the duty of a court to so declare. City of Mobile v. Louisville & Nashville R. R. Co., 124 Ala. 132, 26 So. 902.

Although a part of an act or statute may be invalid or unconstitutional, the remaining valid portion will be sustained if after deleting the invalid part the remaining portions are complete within themselves, sensible, and capable of operation. Wilkins v. Woolf, supra, and cases cited therein.

It is my opinion that the proviso appearing at the conclusion of Section 1 of Act No. 788 is constitutionally impermissible because violative of that portion of Section 45 of our Constitution which mandates that the one subject of a law shall be clearly expressed in the title.

The issue of whether the appellant was rendered immune from liability by virtue of the proviso hereinabove referred to is wholly dispositive of this appeal, I confine my concurrence to this aspect.

Having concluded that the said proviso is invalid, it necessarily follows that the appellee's suit was within the remaining limitations specified in Act No. 788.

BLOODWORTH, J., concurs.

MERRILL, Justice (dissenting):

I dissent because I am not convinced that Act No. 788 violates Section 45 of our Constitution. I think the Act does "regulate further the time within which actions against persons * * * must be commenced," and that the title is sufficient. I would reverse the judgment.

COLEMAN, J., concurs.

MADDOX, Justice (dissenting.)

"A dissent in a court of last resort is an appeal to the brooding spirit of the law, to the intelligence of a future day, when a later decision may possibly correct the error into which the dissenting judge believes the court to have been betrayed."

—Chief Justice Charles Evans Hughes [1]

Thomas Jefferson thought each judge should write an opinion in every case so as to "throw himself in each case on God and country; both will excuse him for error and value him for honesty." [2]

Hoping that a later decision may someday possibly correct the errors here made, I set out those errors which I think are most prominent:

(1) The majority viewed the title to Act No. 788 with "hypercritical exactness" rather than in a broad and liberal spirit as the law requires; (2) Some of the majority think the statute here has "two subjects," a statute of limitations and an immunity from liability; (3) The majority makes architects and contractors liable *in perpetuity* to third persons for injuries and damages resulting from their negligent acts or omissions; (4) The majority construes "cause of action" in a manner completely inconsistent with settled law.

*"Hypercritical Exactness"*

We are a coordinate branch of government, bearing great responsibilities. The powers of our government are divided in three distinct departments, those which are legislative, those which are executive and those which are judicial.

The Constitution of Alabama specifically prohibits the judiciary from exercising legislative and executive powers. Art. 3, § 43, Constitution, 1901.

I think the majority, by interpretation, has infringed upon the prerogatives of the Legislature. The majority has made a microscopic examination of Act No. 788 and concluded it violates Section 45 of our Constitution. It is not the province of this Court to view legislation with "hypercritical exactness." We are supposed to construe acts passed by the Legislature in a very broad and liberal spirit. That principle of law is so settled it needs no citation, but a recent statement by the Chief Justice in Knight v. West Alabama Environmental Improvement Authority, 287 Ala. 15, 246

1. Musmanno, "Dissenting Opinions", 6 Kan.L. Rev. 407, 410; William O. Douglas, "The Dissent: A Safeguard of Democracy", 32 J. Am.Jud.Soc'y 104, 106.

2. 32 J.Am.Jud.Soc'y at page 106.

So.2d 903 (1971), makes the point. He wrote, with seven members of this Court concurring:

"Among other provisions, Section 45 of the Constitution says that each law enacted by the legislature 'shall contain but one subject which shall be clearly expressed in its title.'

"The title to Act No. 1117 does not make any expressed reference to the provisions of Sections 3, 8(7) and 8(9) of the Act which set forth detailed purposes and powers of such public corporations and authorize said public corporations to render financial assistance to industries and private corporations and the provisions of Section 8(1) which authorize the public corporations to engage in works of watershed improvements.

"A lucid discussion of this constitutional provision is found in Opinion of the Justices, 275 Ala. 254, 154 So.2d 12, wherein the following language appears:

" '(2) One of the purposes of the requirement of Section 45, supra, that the subject of a law shall be clearly expressed in the title, is to prevent surprise or fraud upon the legislature by incorporating in bills provisions not reasonably disclosed by its title, and which might be overlooked, and unintentionally approved in enacting the bill. Opinion of the Justices, 247 Ala. 195, 23 So.2d 505. Anoth-

er purpose is to fairly apprise the public of the import of the legislature so they may be heard. Grayson v. Stone, 259 Ala. 320, 66 So.2d 438.

" '(3) However, this court is committed to the principle that this requirment as to clear expression of the subject of a bill in the title is not to be exactingly enforced in such manner as to cripple legislation, or is it to be enforced with hypercritical exactness, but is to be accorded a liberal interpretation. Kendrick v. Boyd, 255 Ala. 53, 51 So.2d 694; Taylor v. Johnson, 265 Ala. 541, 93 So.2d 143.

" '(4) When the subject of a bill is expressed in general terms in the title everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in and authorized by it. Dearborn v. Johnson, 234 Ala. 84, 173 So. 864.'

"This Court in Yeilding v. State ex rel. Wilkinson, 232 Ala. 292, 167 So. 580, held that a statute has but one subject, no matter to how many different matters it relates if they are all cognate, and but different branches of the same subject."

Examined in the light of the foregoing criteria, I believe Act 788 meets all the requirements of Section 45. Furthermore, an examination of the House and Senate Journals[3] will conclusively show that this

---

3. H.B. 899 was introduced by Representative Hill on the fifteenth legislative day and received its first reading on June 25, 1969. It was referred to the Committee on State Administration. House Journal, 1969, p. 794. On the twenty-fourth legislative day, H.B. 899 received its second reading. It was amended in Committee. House Journal, p. 1458. The bill was taken up on the twenty-eighth legislative day. At that time, the bill required "actions" to be commenced within *two* years, but not more than *seven* years. Representative Hill offered an amendment to strike out the word "two" and insert the word "four." Hill's amendment was adopted 76–0. Hill then offered an amendment to

add to Section 5 (present Section 4 of Act No. 788), the following:
"  .   .   . [B]ut it shall apply only to *causes of action* arising subsequent to the effective date of this Act." [Emphasis added.]
An amendment which would have increased the time within which the action could be commenced from four to seven years was tabled. The Bill, as amended, was passed by the House, 69–12. House Journal 2025, 2026. The Senate amended House Bill 899 by striking Section 2 which read, "Nothing in this Act shall be construed as extending the period prescribed by the laws of this state for the beginning of an action." The Bill passed the

Act received considerable attention when it was going through the Legislature. I cannot believe the legislators did not know what the bill contained. The consideration given the legislation is all to the contrary, as shown by the House and Senate Journals.

*"Liability of Architects and Contractors To Third Parties and Statutes of Repose"*

Historically, most courts, in passing upon the question of a building or contractor's negligence resulting in injury or damage to third persons after the completion of the work and acceptance thereof by the owner, start with the assumption of what has been considered to be the general rule, namely, that the contractor is not liable for such injuries to third persons, on the theory that no privity of contract exists between the contractor and such third persons, and that no duty is owed by the contractor in performing the contract other than to the contractee. There was no liability at common law. However, as in the case of manufacturers and sellers of chattels, a long list of exceptions to the general rule grew up in an attempt to lessen the harshness of the original nonliability rule. During the last decade or two, numerous courts have repudiated the rule and have brought an end to the differentiation between manufacturers of goods and building or construction contractors. See Annotation: Contractor-Liability to Third Person, 58 A.L.R.2d 865. Therefore, liability of a contractor or architect for damages to third parties not in privity was nonexistent until less than twenty years ago. My research shows that Alabama has not considered the rule. In Beasley v. McDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971), this Court did consider liability of an inspector for an alleged negligent inspection which resulted in injury to a person not in privity of contract. While I do not predict what Alabama would do, I assume that Alabama would probably follow the modern trend and impose liability on a contractor even after completion and acceptance of the work. I think the possibility of liability prompted the Legislature, probably at the urging of architects and contractors, to set limitations insofar as the maintenance of such an action is concerned.

In determining what the Legislature intended, I start with some basic principles. In the past, an architect or builder could not be sued for negligence by a third person, after he turned over his work to the owner. There was no privity of contract. The privity rule was being abolished. The question was, "Should architects and builders be liable in perpetuity?" Our Legislature and over thirty other Legislatures answered this question in the negative. Then what time should be set?[4] The statutes in each of the states vary. The proceedings of the Alabama House of Representatives where Act No. 788 originated indicate that the Legislature gave considerable attention to the question of the time within which there would be no liability. (See footnote 3.) I would leave this policy decision to the Legislature where the Constitution places it.

The Legislature is bound by the Constitution also. Then, a threshold question is: Could the Legislature constitutionally pass this statute to shield contractors and others from liability after the passage of a specified period of time? I think so. I find no constitutional violation because the statute of limitations applies only to persons within a designated class or that it abolishes a right to sue after the expiration of four or seven years, as may be applicable. In Sellers v. Edwards, 289 Ala. 2, 265 So.

Senate. Senate Journal, p. 2575. The Bill was returned to the House and the House concurred in the Senate amendment striking Section 2 of the Bill. House Journal, p. 2576. The vote was 75-2 for passage.

4. A survey of actions pending against architects showed that 84.3% of all claims against architects would normally be brought within four years from completion of services. 18 Cath.U.L.R., at page 366.

2d 438 (1972), (medical malpractice statute of limitations) this Court said:

"A state is not prohibited upon constitutional grounds from making classifications of persons and objects, or from passing laws which apply only to persons within a designated class. Classification is an inherent power of the Legislature but it must not be arbitrary or unreasonable. In order to justify interference by the courts with the wide discretion which the Legislature has in such matters, it should appear that the interests of those generally affected by the act, as distinguished from those of a particular class, require such interference. In Re: Opinion of the Justices, 252 Ala. 559, 561, 42 So.2d 56 (1949)."

Alabama's statute is similar to statutes passed in over thirty other states, all designed to limit liability in perpetuity of architects and contractors. I find two courts which have held such statutes unconstitutional. In Skinner v. Anderson, 38 Ill.2d 455, 231 N.E.2d 588 (1967), the Illinois court held a statute similar to Alabama's to be unconstitutional. However, I think that the Alabama Supreme Court, in Sellers v. Edwards, supra, answers this question contrary to the holding in Skinner v. Anderson.

In Saylor v. Hall, 497 S.W.2d 218 (Ky. 1973), the Kentucky Court of Appeals did declare their statute unconstitutional. But Kentucky also declared its "guest law" violative of the Kentucky Constitution. The Kentucky Court, after discussing other decisions which had upheld those statutes, noted:

"Kentucky has no guest-passenger automobile statute, not because of legislative inaction, but because such a statute was voided as violative of our state Constitution. In the decision, section 54 played a prominent part. In Ludwig v. Johnson et al., 243 Ky. 533, 49 S.W.2d 347 (1932), this court struck down a statute that prohibited recovery by a guest passenger in an automobile against the owner or host driver for personal injuries or death resulting from the driver's negligence."

This Court, unlike Kentucky's, has upheld our guest statute. Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939). This Court does not follow the rationale expressed in either *Skinner* or *Saylor*.

The Arkansas Supreme Court, in Carter v. Hartenstein, 248 Ark. 1172, 455 S.W.2d 918 (1970), upheld an Arkansas statute similar to Alabama's against an attack on constitutional grounds. The court commented:

"The question raised is whether the legislature was arbitrary or capricious in granting this immunity from suit four years after substantial completion of construction to those enumerated in the statute without giving such protection to others such as materialmen and owners, whom appellant claims belong to the same class as those exempted.

\*    \*    \*    \*    \*    \*

". . . Further, a vital distinction, nonetheless, exists between owners or suppliers and those engaged in the professions and occupations of design and building. This is not arbitrary or unreasonable. It is a legitimate and practical exercise of the legislative function.

"To say that there can be no limitation in perpetuity against a designer or erector of a structure would be in effect to discriminate against professional builders and designers. Whether three years, four years or five years—or more or less —is the correct or appropriate period, should not and cannot be the concern of the judiciary. We only must determine whether the legislature has acted reasonably in respect to their mandate from the people as set out in the Constitution.

\*    \*    \*    \*    \*    \*

"Almost every statute or law serves to work for some and against others. Here, we simply do not view this enactment as granting special privileges and

immunities. Our opinion is that Act 42 is valid, reasonable, constitutional and not enacted for arbitrary or capricious reasons. We think the legislature was entirely within its constitutional right in passing such statute."

See also, Josephs v. Burns, 260 Or. 493, 491 P.2d 203 (1971), (not a violation of a provision similar to Art. 1, § 13, of Alabama's Constitution); Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co., 81 Wash.2d 528, 503 P.2d 108 (1972), (not special class legislation); Rosenberg v. North Bergen, 61 N.J. 190, 293 A.2d 662 (1972), (not a violation of due process by barring a cause of action before it had arisen; not special class legislation); Salesian Society v. Formigli Corporation, 120 N.J.Super. 493, 295 A.2d 19 (1972), (not, in effect, an amendment to present statute of limitations without that law being fully set out in the statute under review); see also, O'Connor v. Altus, 123 N.J.Super. 379, 303 A.2d 329 (1973).

Therefore, it appears that other state courts have had little difficulty finding a legislative purpose for similar statutes of repose. They have upheld them for good reason. There must be a time when, even in the absence of a statute, a builder's liability to third parties would cease. If the Legislature does not set a limit, the judiciary must. The Kentucky court recognized this principle in Saylor v. Hall, supra. The court said:

"Returning now to the principle that we discussed in the opening of this opinion, we conclude that it is unnecessary in this case to delineate or define the outer limits of a builder's liability in 1964 in Kentucky to a third party injured by the negligence of the builder whose work had been completed and accepted by the owner. We are satisfied that, under the precise facts of this case, the builder at that time was at the least subject to liability to third parties for negligent construction, though completed and accepted, that created a latent defect in a stone mantel and fireplace in a home where innocent third parties on the property could foreseeably be injured by such dangerous and concealed condition. Therefore, we hold that there was an existing right of action in this state for the type of negligence claimed in this lawsuit when the questioned statutes were enacted."

Even in actions involving equitable causes the doctrine of laches is recognized. In fairness to a defendant, whether by statute or judicial determination, there comes a time when a defendant ought to be secure in his reasonable expectation that the slate is clean of ancient obligations, and he ought not to be called on to resist a claim when "evidence has been lost, memories have faded, and witnesses have disappeared." Order of R. R. Telegraphers v. Ry. Express Agency, Inc., 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1944); See "Developments in the Law, Statute of Limitations," 63 Harv.L.Rev. 1177. Potential defendants have constitutional rights, too.

### Act No. 788 is a Statute of Repose

Act No. 788 is a statute of repose. It applies to persons who perform or furnish the design, planning, supervision or construction of improvements on real property. It applies to *all* actions, in *contract or tort*. While the Act may not be a "traditional statute of limitations" in that it can bar a right of action before it accrues, it nevertheless is a limitation on the right to bring an action. The statute of repose is also different in kind in that it specifies when the time period begins to run—after final completion of the improvements, rather than when the cause of action accrues. Most limitation statutes specify that the period begins to run from the date of the accrual of the cause of action. While this statute is different, it is still a *statute of repose*. It does not bar a *right of action which has accrued*. The majority uses the words "statute of limitations." The title to Act No. 788 does not read that way. It says "to regulate further the time

within which *actions* against persons . . . must be commenced."

The court in Rosenberg v. Town of North Bergen, 61 N.J. 190, 293 A.2d 662 (1972), discussed the purpose and constitutionality of New Jersey's statute. The court said:

"We come then to a consideration of the constitutionality of this enactment. In three other jurisdictions similar acts have been subjected to constitutional challenge. In Illinois the statute was found to be unconstitutional; in Arkansas and Oregon the enactments were sustained. Skinner v. Anderson, 38 Ill.2d 455, 231 N.E.2d 588 (1967); Carter v. Hartenstein, 248 Ark. 1172, 455 S.W.2d 918 (1970), appeal dismissed, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971); Josephs v. Burns, [260 Or. 493,] 491 P. 2d 203 (1971).

"It seems important, first, to examine the nature of this law. In an important respect it is unlike the typical statute of limitations. Commonly such a statute fixes a time within which an injured person must institute an action seeking redress, and generally this time span is measured from the moment the cause of action accrues. Here such is not the case. The time within which suit may be brought under this statute is entirely unrelated to the accrual of any cause of action.

"Where a claim for redress is based upon negligent injury to person or property, the cause of action accrues when there has been a negligent act with proximately resulting injury or damage. The careless act itself is not enough to give rise to a cause of action; there must also be consequential injury or damage. Rosenau v. City of New Brunswick, supra, 51 N.J. 130, at 137–139, 238 A.2d 169. Thus plaintiff's alleged cause of action did not arise until she fell and sustained injury. Of course this was many years after the ten-year period fixed by the statute had expired. *She claims that the statute, in its application to her, amounts to a deprivation of due process, since, as she expresses it, the statute bars her cause of action before it has arisen. This formulation suggests a misconception of the effect of the statute. It does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising.* Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has no cause of action. The harm that has been done is damnum absque injuria—a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed. . . ." [Emphasis added.]

Admittedly, the title to Act No. 788 does not contain the actual periods of limitation as does the title to the Act dealing with actions against doctors. (Act No. 766, Acts of Alabama, 1953, carried as Tit. 7, § 25(1), Code, 1940, Recomp., 1958). Admitting this, I fail to see, however, that the failure of the title to have the seven-year limitation specifically mentioned makes the title vague. The subject of a bill can be expressed in *general* terms. At least, this Court has been committed to that principle heretofore. *Knight*, supra. As I understand Mr. Justice Harwood's special concurrence, he does not think Act No. 788 contains two subjects, only that the title is not clear. Mr. Justice Jones also says the title is vague and uncertain, but goes further and says Act No. 788 contains two subjects.

*"The Action was barred assuming the Seven-Year Limitation is void."*

I believe the action was barred even assuming the seven-year limitation is void.

Mr. Justice Jones does not discuss the effect of Act No. 788 which remains.

He concludes:

"Since under the facts of this case the defendant's request for the general affirmative charge necessarily sought to invoke only the seven-year provision of the Act, we pretermit consideration of the constitutionality of the remaining portion of the Act including its retrospective application."

Mr. Justice Harwood says:

"Having concluded that the said proviso is invalid, it necessarily follows that the appellee's suit was within the remaining limitations specified in Act No. 788."

Assuming Mr. Justice Jones finds some portions of Act No. 788 constitutional, (if it contains two subjects, no part of it could be saved, in my opinion) then I think he is wrong when he says the point was not properly raised.

Mr. Justice Harwood gives no reasons to support his conclusion that the part of the statute which remains does not bar the action. I think it does. The period of limitation began to run from the date of the *"completion of the improvement"* in 1959. If McBride had a *cause of action* based on any act or omission, whether in contract or tort, the action must have been commenced within four years after completion of the improvement; "provided, that if the *cause of action* is not discovered and could not reasonably have been discovered *within such period* [the four-year period], then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. . . ."

McBride's cause of action did not arise during the four-year period. It did not arise until after the effective date of the Act; therefore, the provisions of Section 4 to the effect that the Act "shall apply only to causes of action arising subsequent to the effective date of this Act," are applicable to McBride's claim. The words "cause of action mean a legal wrong for which an "action" may be, but has not been, brought in court, McDowell v. Henderson Mining Co., 276 Ala. 202, 160 So.2d 486 (1964). Since McBride had no right to sue prior to the effective date of the Act, the statute of repose applies to his claim.

I suggest a look at the Act will show that the words "cause of action" in Sections 1 and 4 mean the same thing in both sections. I will give examples, involving tort and contract situations, to prove my point.

The statute covers actions in *contract* and *tort*. Even though we deal here with a tort action, the statute is not limited to tort actions. In contract, a party's *right of action* on the contract *accrues* when the *contract is broken* by the other party. He may sue as soon as the contract is breached. The amount or kind of damages which the plaintiff claims and which may be recoverable by him on the breach is immaterial. 54 C.J.S. Limitations of Actions § 125, p. 40. In personal tort actions, such as the one here, the right to bring suit does not occur until a person is *injured*. Unquestionably, McBride's "cause of action" did not accrue until November 3, 1969, when he was injured.

What does the phrase regarding discovery of a "cause of action" mean in the context of Section 1? First, let us consider what it means in a contract action. There was evidence that Bagby failed to construct the elevator in accordance with industry standards. This failure probably constituted a breach of its contract with the YMCA. The YMCA may not have discovered the omission and "breach"—the "cause of action" for this breach—until sometime later—maybe not until McBride was hurt. But since any "cause of action" by the YMCA against Bagby for breach of contract would have *accrued* when the breach occurred, Act No. 788 would not

"apply" to that "cause of action." The limitations on actions for breach of contract [either six or ten years] in effect at the time the *cause of action accrued* would have controlled. Similarly, if McBride had been injured *prior* to the effective date of Act No. 788, his "cause of action" would have accrued and Act No. 788 would not "apply." In such case, McBride would have been able to take advantage of not only the one-year statute but also the provisions of Title 7, Section 36, Code of Alabama 1940 (Recompiled 1958), which allows infants additional time within which to file suits. But McBride *was not injured before the Legislature acted,* and since McBride's *right to sue* did not exist on the effective date of the Act, his right could be barred or limited as the Legislature saw fit. He had no substantive right to sue. Therefore, the Legislature took nothing from him.

If injury gives rise to the "cause of action", how can a person discover an injury? It may seem anomalous at first blush to say that a person would *discover* an injury in a purely personal action. In most cases, a person knows immediately when some act or omission has caused him injury. But this is not always true. The classic example is the malpractice action. Sometimes a foreign object is left in a person during an operation. The patient might have a "cause of action" but did not discover it. As a matter of fact, the proviso in Act No. 788 regarding discovery of the "cause of action" is identical with the proviso in the malpractice statute. Consequently, I think the proviso has the same meaning in Act No. 788 as it does in the malpractice statute [Title 7, § 25(1), Code of Alabama, 1940, (Recompiled, 1958)] The question may arise as to when a person might have a *right to sue* an architect or builder for negligence and has not *discovered* his "cause of action." One example could be as follows: A negligently constructs pipes in a building carrying gases which are dangerous. B works in the building and is unaware that the gases

are escaping because of the faulty construction. He becomes ill because of the inhalation of the gases. Later, after an inspection turns up the negligent construction as being the cause for the escape of the gases, B, for the first time, *discovers* his "cause of action" against A. Assume the four year period has run. Is B barred? No, not if B's injury occurred within the four-year period but B did not discover it or could not have reasonably discovered it during the four-year period after "final completion of such improvements." As I construe the statute, B would have up to seven years after completion of the improvement in such cases, provided B filed his suit within six months after he discovered his cause of action, or could have reasonably discovered it.

In other words, I believe the proviso, which gives additional time to sue when a "cause of action" is not discovered or could not reasonably have been discovered, is beneficent in both contract and tort actions. The general rule is that ignorance of a cause of action, unless superinduced by fraud, is not one of the instances in which the running of a limitation statute is tolled. Hudson v. Moore, 239 Ala. 130, 194 So. 147 (1940). The provisos in Act No. 788 and the malpractice statute change the harsh results of the rule set out in Hudson v. Moore, in my judgment. But the malpractice statute and Act No. 788 set an outside limit beyond which *no action* can be maintained. I think the Legislature can do this. In fact, this Court, in Sellers v. Edwards, said it could be done in medical malpractice cases.

I would like to list one further reason why I think the phrase "but it shall apply only to causes of actions arising subsequent to the effective date of this Act" should be construed as I suggest.

Had the Legislature made no reference to existing "cause of action" on which suit had not been brought, then this Court would have to construe the new statute as giving the entire time prescribed by the

**208**

new law before the prescription would be complete. Henry v. Thorpe, 14 Ala. 103 (1848). But the Legislature made *special* provision in Act No. 788 and specifically said that the Act would apply only to *causes of actions* "arising subsequent to the effective date of the Act."

I interpret Act No. 788 to mean that if a person's *right to sue existed* at the time the Act became effective, whether his right to sue sounded in *contract* or *tort*, the old law limiting actions applied. If the *right to sue* occurred *after* the effective date of the Act the new limitation [a basic four-year period after final completion of the improvements, but no more than seven] applied.

Consequently, I think the Act is constitutional and that McBride's action was barred. If the four-year limitation remains, I still think McBride's claim was barred.

I make one further point regarding the opinions of some of the Justices that Act No. 788 contains two subjects—one a "traditional statute of limitation" and one which grants immunity. That conclusion, in my opinion, is incongruous. Since Act No. 788 specifies that the limitation runs from the *time of the "completion of the improvement,"* the four-year provision, and the six-month proviso, and the seven-year proviso are all immunity provisions. Suit "must be commenced," to use the words of the title, within the specified time periods or the right to sue is barred. That is immunity. All statutes of limitations grant immunity from suit after the expiration of specified periods of time. Most limitations run from the time the cause of action accrues. The statute here runs from the "completion of the improvements." The intent of the Legislature was to limit the liability of architects and contractors after expiration of the limits set out in the statute. I would carry out this intent. Therefore, I must respectfully dissent.

McCALL, J., concurs.