## HENRY AND WIFE ET ALS. v. THORPE ET ALS.

1. The statute abolishing the fictitious proceeding in ejectment applies only to those cases in which ejectment was previously the proper remedy, and was not intended as a substitute for the common law writ of right.

2. When the bar created by the statute of limitations is not complete at the time a new statute of limitations is passed, changing the period of time necessary to create a bar, the unexpired term required by the old law, is not modified by the new, so as to give to both statutes a proportional operation: but the time past is effaced, and the period provided by the new law is to govern, unless the repealing act, in terms, provides for the adjustment of the limitation, with reference to the time already past, and provides the mode.

Appeal from the Circuit Court of Mobile. Writ of right before the Hon. John Bragg.

The plaintiffs in error, by their writ, sued out the 27th October, 1845, demanded a lot of land in the city of Mobile, and counted upon the right of their ancestor, Sebastian Shade, alledging that he was seized of the premises on the 1st January, 1820, in his own demesne as of fee, and that he being

so seized during his life, was unjustly, and without judgment, disseized of the same by one Thomas Shields, under whom the defendants claim, and after the disseizin aforesaid, the said Sebastian Shade died, to wit: on, &c., at, &c., and that the said plaintiffs are his children, and heirs at law, &c.

The defendant pleaded the general issue, with leave to give any special matter in evidence.

2. The statute of limitations of 30 years.

3. The statute of limitations of 20 years.

4. The statute of limitations of 10 years.

5. The statute of limitations of 30 and 10 years united.

Issue being joined on these pleas, during the trial a bill of exceptions was taken, from which it appears that the ancestor of the plaintiffs, was seized in fee of the land described in the declaration, in August, 1818, and died in 1820, leaving the plaintiffs, his heirs at law, minors. That the defendants claimed a freehold in the premises, under conveyances from persons who, in August, 1818, entered upon the said lands, and who, together with the defendants, have remained in the adverse possession of the same since that time, claiming title to the fee.

The court charged the jury, that the fact that the defendants, and those under whom they claimed, had remained in possession, claiming the land as their own since 1818, was a complete defence to the action, under the statutes of limitations, if they found the facts relied on to be proved.

The plaintiffs excepted to this charge, and now assign it as error.

J. A. CAMPBELL, for plaintiffs in error.

1. A retrospective operation will not be given to a statute, unless the terms of the statute plainly require it. Boyer v. Holmes, 2 Ala. Rep. 54; Dash v. Von Kleek, 7 John. 477.

2. That statutes of limitations regulating the period in which actions may be brought generally, apply to causes of action which arise after the passage of the act. The causes of action which arose before, are in general unaffected by a statute subsequently passed. Without questioning the pow-

Henry and wife et als. v. Thorpe et als.

er of the legislature to impose a new law of limitation, the same principle of propriety which induces courts to give to statutes a prospective effect, is applicable to statutes of limitations. Cochran v. Spiller, Vern. & Scriv. R. 468; 9 Wend. 661; 10 Id. 363; Tufts v. Rice, Brux. Rep. Append. 30; Hazlett v. Crutchfield, 7 Ohio R. 2d part, 153; Lowry v. Keyes, 14 Verm. 66; 2 Troplong Pres. §1075; 2 Vazeille des Pres. § 789; Wilkinson on Limitation, 137, 140, Law Lib.; 2 Sandf. Ch. R. 533; 12 Serg. & R. 330.

3. Statutes of limitations which affect antecedent causes of action only commence their operation at the date of the act. The whole term which the statute allows for the prosecution of a suit must elapse before a party having such a cause of action can be barred by such a statute, unless the terms of the statute plainly declare a different rule. No portion of the time that has elapsed from the accrual of the cause of action to the enactment of the statute can be estimated. Cases above cited; 24 Merlin's Rep. 108, tit. Pres. sec. 3, § 3; 2 Delvincourt Com. 634.

4. The rule adopted by the circuit court, of diminishing the period in each suit in the proportion of the time in the new statute to that allowed by the old, is an arbitrary rule, beyond the power and jurisdiction of the court. Statutes must be enforced according to the will of the law making power. The law making power has imposed a limitation of 30 years, or of ten years to an action like the present. The court cannot fix another term in which the action may be brought by a combination of statutes. 2 Troplong, Pres. 1092; 2 Vazeille, 801; 24 Merlin's Rep. tit. Pres. sec. 1, § 3.

5. The rule applied by the circuit court, is contradicted by the proviso to the first section of the statute of 1843. That proviso was intended to extend to the whole act, and its terms comprehend all the actions embraced in it. This proposition is only true in the case that a retrospective operation is given to the second section of the act. In the event of such a construction being given to the second section, the proviso to the first section must be extended to save it from the charge of injustice, and defeating vested rights.

6. The last article of the civil code prescribes the law to

14

France upon the subject of the prescriptions, which had then commenced, and were unexpired.  That article continues the existence of the ancient laws.  Various questions however arose.  Did this rule apply to criminal proceedings, which contained no such provision ?  Did it apply to the commercial code, or was it confined to the proceedings under the civil code alone ?  This leads to the inquiry, whether it rested upon a sound principal.  The court of Cassation rendered four decrees, in which it dissented from the principle of the civil code, and adopted the rule, that the laws operated proportionally.

These four decrees were abandoned in June, 1812, and M. Merlin, in a note to his Pleading, on the subject, retracts the argument.

The controversy in the French courts, now, is upon the question, if the prescriptions which have been commenced before the publication of the code, are regulated absolutely by the law in existence at the time, or whether, if after the whole term of prescription has elapsed, under the code, the actions that existed at its publication are not bound.

Vazeille thus discusses the doctrine of the court of Cassation, in the four cases cited : " Between the new prescriptions, which could not be properly applied to pre-existing offences, since the effect might be suddenly to bar all prosecutions for them, and the ancient prescriptions which alone by law are properly applicable, the criminal code of 1791, and of the year 4, established no middle term.  Nevertheless, the court of Cassation, had adopted the plan of M. Merlin, and decided in four decrees, of which he gave an account, that the ancient law, and the new law, ought to concur, for the determination of the prescription, commenced under the one, and not accomplished under the other.

They devided the prescription, and calculated it by separate portions.  If there had elapsed under the first law ten years, forming half the delay it established, there would remain under the new law of the year 4, but one half the prescription which would be accomplished in the year, if the new prescription was fixed at six years.  This proceeding is ingenious, and might have appeared suitable in the law.  But have the tribunals the power to constitute this amalgamation

of the new with the old law? The court of Cassation re-
nounced this combination, when it came to observe the crimi-
nal code of 1810. Not that this code contained any transi-
tory provision upon the subject of prescription, but the court
deduced an analogy from the decree of 23 July, 1810. The
article 6 of that decree is, courts and tribunals shall apply to
crimes, and offences, the penalties imposed by the laws ex-
isting at the moment when they were committed. Never-
theless, if the nature of the penalty pronounced by the new
code, is less severe than that contained in the existing code,
courts and tribunals will apply the penalties of the new code.
They have considered that being in *pari materia*, the deter-
mination of the penalties to be inflicted, and of the time ne-
cessary to prosecute the offender, depended upon the same
considerations, and that the rule adopted for penalties, neces-
sarily involved, and virtually extended to the prescription of
the prosecution. This interpretation necessarily results from
several decrees of the court," &c.  2 Vazeille, § 801.

M. Merlin, in his additions of 1825, continues to make war
upon the first part of the article 2281; but he acknowledges
his error in wishing to make the ancient law concur with the
new, in the regulation of the same prescription, and he re-
cognizes, that the result drawn from the decree of 1810 is
just.  Eakin v. Roub, 12 Serg. & R. 330.

LOCKWOOD, contra.

As to the construction of the 43d section of the act on
Clay's Dig. 320.—The language of an act should neither be
enlarged or limited by construction, unless the object of the
statute require it.  12 Pick. 223, 226.

The natural import of the words convey to the mind, that
the action of trespass to try titles is given in lieu of the an-
cient common law remedies to try the right and title
to land. If it were held, that notwithstanding this act,
the writ of right would lie, then the intention of the le-
gislature must have been to increase, and not to diminish the
remedy for the recovery of real estate. Was it the intention
of the legislature merely to give a cumulative remedy? If
so, the language employed is inappropriate. It is that here-
after the mode of trying the right and title to lands tene-

ments and hereditaments shall be by action of trespass.    If it shall be by action of trespass, it certainly shall not be by any other action.

The writ of right has never been used in this State, and is not adapted to the proceedings and practice of the same. The action of trespass is, and was at the time of the passage of said act, a very simple and familiar one.    Both the language and intention of the statute shew that trespass to try titles was a substitute for the old remedies.    The action of trespass and ejectment, since it was restored, have for the last twenty-five years been the only mode of trying title to land.    This may well be considered as sanctioning the foregoing construction.

It is true, that this court has decided the action of trespass to try titles was barred by twenty years adverse possession. This decision was made on the statute of limitations—the question whether the writ of right would lie, has never been adjusted or decided.

If, however, there was any doubt as to whether the 43d section, repealed all the old remedies for the recovery of real estate, the 46th section passed in 1835, taken in connection with the 43d, seem to settle it clearly.    The language used is, that when the action of trespass to try titles would, under the present laws, be the proper action—the plaintiff, at his election, shall have either trespass to try title, or the action of ejectment, clearly limiting his right of action to those two. Now it is believed, that in all cases when the writ of right under the old law could be properly used, the action of trespass under the statute, would be the proper action, and hence under section 46, if it is the proper action, then none other than trespass and ejectment can be used.    This too would be continuing a uniformity of decision in reference to the statute of limitations.

COLLIER, C. J.—Where the claimant of real estate neglected to resort to his possessory action within the period prescribed by law, or if the ouster took place upon a discontinuance, the adverse party was considered as having acquired not merely an apparent, but an actual *right of possession;* the effect of which was that the claimant was driven

to his real action droitural, (to determine the right of property,) as the only remaining remedy. Of such actions, the principal one was the *writ of right*, sometimes called to distinguish it from others of the droitural class, the writ of right *proper*. 2 Bla. Com. 197; 3 Ibid. 193; 3 Step. Com. 488, 489.

The writ of right was not only an established remedy at the common law, but it is recognized in many, if not all the states of this Union. Snapp v. Spengler, 2 Leigh's Rep. 1; Wells v. Prince, 4 Mass. Rep. 64; Wellington v. Gale, 13 Mass. Rep. 483; Sanders v. Buskirk, 1 Dana's Rep. 410; Gaines v. Conn, 2 J. J. Marsh. Rep. 104; Copp v. Lamb, 3 Fairf. Rep. 312; Green v. Liter, 8 Cranch's Rep. 229; Williams v. Woodward, 7 Wend. Rep. 250.

By the act of 1802, "for the limitation of actions, and for avoiding vexatious lawsuits," it is enacted that no person having any right or title of entry to any lands, tenements or heraditaments, shall make an entry therein, but within twenty years after such right or title shall have accrued : *Further,* that "every real, possessory, ancestral, mixed or other action, for any lands, tenements or hereditaments, shall be brought and instituted within thirty years next after the right or title thereto, or cause of such action accrued, and not after : *Provided," &c.* These statutory provisions most clearly indicate that the legislature designedly distinguished between actions in which the plaintiff adapted his remedy to a continuing right of entry, and those in which the plaintiff asserted a mere right of property. This latter class comes within the last branch of the enactment, in which the limitation is thirty years; and thus it is shown that the writ of right is recognized as a substituting remedy. Clay's Dig. 327, 328, § 83, 85.

Perhaps these views are not controverted, but it is insisted that the act of 1821, "to abolish the fictitious proceedings in ejectment, and for other purposes therein mentioned," annulled the proceedings by writ of right. That statute abolishes the fictitious proceedings in the action of ejectment, and declares "that hereafter the mode of trying the right and title to lands, tenements or hereditaments, shall be by action of trespass, in which the plaintiff shall indorse on the

writ and copy writ that the action is brought as well to try titles as to recover damages :" *Further*, that the laws in force in relation to the action of ejectment, except as they relate to the fictitious proceedings, shall apply to the substituted remedy : *Lastly*, if the plaintiff recovers in trespass to try title, he shall have execution for the possession with damages and costs. The act contains but one other section, which is altogether foreign to the subject, and need not therefore be noticed. Clay's Dig. 320, § 43, 44, 45.

Not only the title of this statute, but the language which it employs, indicate with clearness its purpose, and the extent of its operation. We have often held that the intention of its framers was to furnish a simple and plain remedy for the recovery of the possession of lands, with damages for their detention, instead of the protracted and expensive machinery of two distinct suits, one of which was burdened and perplexed with legal fictions. The act sets out with this declaration of its design, and it is apparent from the second and third sections, that it did not propose to do more; for these provide that the law applicable to ejectment, saving the fictitious proceedings shall be applied to the new remedy, and if the plaintiff is successful, he shall have execution for the possession, as well as damages and costs. The affirmation as to the law which was to control this statutory action is very significant to show in what cases the legislature intended it should be the appropriate remedy, and we think is equally potent as if negative terms had been employed to limit its use. It would have been quite as easy to have *abolished* the writ of right *eo nomine*, as thus to have substituted ejectment by another remedy, and perfectly natural, if such a result was contemplated, to have declared that the law applicable to real actions *droitural*, should furnish rules of decision in analogous cases upon the trial of trespass to try titles. The silence of the act in these respects is strongly persuasive of the legislative intention. Thus looking at the entire enactment, we cannot doubt that the only common law remedy it dispensed with, was ejectment—leaving all others unaffected by it. The general *terms*, that " hereafter the mode of trying the right and title to lands, tenements or hereditaments, shall be," &c. must be construed to apply to

those cases in which ejectment was previously the proper remedy.

The construction we have placed upon the statute cited is supported by the act of 1835, " in relation to suits of eject-ment and demurrers," which enacts that " in all cases where the action of trespass to try titles would under the present laws, be the proper action, the plaintiff, at his election, shall have either said action of trespass to try title, or the action of ejectment; and when the action of ejectment shall be brought, it shall be lawful, and shall be the duty of the jury trying the same, to assess the damages in favor of the real plaintiff, as in actions of trespass to try titles." In re-estab-lishing the action of ejectment as a concurrent remedy in those cases only in which trespass would lie, clearly implies that the latter was not a universal remedy for the trial of the title to real estate.

We come now to consider the case in respect to the stat-ute of limitations. The statute of thirty years had not com-pleted a bar in 1845, when the present action was instituted, and the question is, whether that statute, in connection with the act of February, 1843, or the latter in itself, consum-mates the bar. It is enacted by the last statute, that where lands have been, or may be hereafter sold under a decree in chancery to satisfy a mortgage, deed of trust, or other incum-brance, all rights, or equities of redemption in persons not parties to the decree, who shall claim under the mortgagor, grantor, &c. shall be forever barred, unless suit for the re-demption shall be commenced within five years from the ex-ecution of the decree. "*Provided*, that no suit shall be barred by the operation of this act, within five years from its passage." The second section is as follows: "All actions for the recovery of lands, tenements or hereditaments in this state, shall be brought within ten years of the accrual of the cause of action, and not after: *Provided*, that five years be allowed under both sections of this act, for infants, *femes covert*, insane persons, and lunatics, after the termination of their disabilities to bring suits." Clay's Dig. 329, § 92, 93.

By the Code Napoleon, art. 2281, it is provided that where the prescription shall be altered by law after it commences, and a longer term is required, then the unexpired part of the

prescription shall be increased to meet the demands of the new law. The principle embraced by this article has been recognized by the supreme court of Louisiana. See God-dard's heirs v. Urquhart, 6 Lou. Rep. 674; Camp v. Orne, 11 Id. 58.

It is contended by the defendants that the acts of 1802 and 1843 must operate proportionally, and that as five-sixths of the period of limitation prescribed by the former had elapsed before the latter was enacted, one-sixth of the time prescribed by the act of 1843 being added, the bar would be perfect. We have not been able to find any decision of a court recognizing the common law, in which the time elapsed under a repealed statute of limitations had been taken into account to help out the prescription of the new law, when the period provided by the old enactment had not expired previous to its repeal. Such a doctrine, we think is not supporten by the civil law. The citations of the counsel for the plaintiff show that civilians do not entirely concur in their opinions upon this question; yet the majority of them, and the best reasoned discussions, maintain that it is competent for the legislature to modify the terms of prescription at pleasure, and where the prescription has not been completed when the law was changed, the past shall be effaced and the substituted law shall determine the time that bars a recovery. It is certainly allowable, and perhaps would be altogether just, that effect should be given to the time past, whenever a change is made in the statute of limitations, so that the term may not be protracted; but if no such provision is made in the new law, we cannot perceive by what authority the courts can give to both statutes a proportional operation. The latter, if not an express, will operate an implied repeal of the former, and thus destroy its effect *in toto*. Statutes of limitations, it has been often held, do not enter into the contracts of parties, or affect their rights, until the presumption is complete : *Besides*, like all other acts of legislation their field of operation is the future, and they will not be permitted to act retrospectively. Dwarris on Sta. 680 to 682; Wilkinson on Lim. 140 to 147; Rathbone v. Bradford, 1 Ala. R. 312; State v. Click, 2 Id. 26; Prince v. The U-

Henry and wife et als. v. Thorpe et als.

States, 2 Gal. Rep. 204; Tuft v. Rice, Breese's Rep. (Ap.) 30; Prevo v. Lathrop, 1 Scam. Rep. 306; Piatt v. Vathier et al. 1 McL. Rep. 158; Union Cotton Manufactory v. Lobdell, 7 Mart. Rep. N. S. 111; Reeves v. Adams, 5 Lou. Rep. 292; 9 Bac. Ab. 228, Bouv. ed.   An act of limitations, being remedial, may operate upon contracts or causes of action existing at the time of its enactment, that is, may prescribe the time beyond which suits shall not be maintainable upon them; and the fact that there was a statute upon the subject when the contract was entered into, or the right of action accrued, can make no difference.

True, the enlarging or lengthening of the term may introduce some seeming incongruities, but these, according to a modification of facts, affect the plaintiff and defendant about equally.  Thus, where the prescription, as in this case, is thirty years, and the time was within three years of expiring when the new law was enacted, (evidently with the intention of shortening the term to one third,) the bar is lengthened seven years, as it cannot become complete until ten years after the passage of the act.  But suppose but five years had elapsed when the last statute was passed, then ten years more, instead of twenty-five, as required by the act of 1802, would have perfected the prescription.  It is competent for the legislature, upon any change of the law in this respect, to make such special provisions as are deemed expedient, but if a contrary intention is not manifested, the entire term prescribed by the new law must elapse after it takes effect, before the prescription is complete.

It is unnecessary to consider the effect of the provisos to either section, or whether that to the *first* is to be considered as a restriction upon the second also; for no consequence would result from the solution of that question in the present case.  The ruling of the circuit court is adverse to the views we have expressed—its judgment is consequently reversed, and the cause remanded.

DARGAN, J., not sitting.