On July 26, 1978, MacMillan Bloedel, Inc. (MacMillan), purchased forty acres of land located in Choctaw County from C.B. Hightower III and his wife Brenda Hightower. On May 28, 1980, MacMillan filed an action in the Circuit Court of Choctaw County to quiet title, naming Azariah Spears as a defendant, after it had learned that he was in possession of and claiming to own that land.[1] Spears counterclaimed for damages in trespass, alleging that MacMillan had wrongfully cut his timber, and the case was subsequently tried before a jury. During the trial, MacMillan amended its complaint to state a cause of action in the nature of ejectment.[2] The trial court directed a verdict in favor of Spears on the quiet title claim, and the trial proceeded on MacMillan's statutory ejectment claim and Spears's counterclaim for trespass. The jury rendered a verdict in favor of Spears on the ejectment claim and awarded him $6,000.00 in damages on his counterclaim. The trial court entered a judgment on the verdict, from which no appeal was taken by MacMillan. Thereafter, on October 27, 1981, MacMillan filed a second statutory ejectment action, again naming Spears, and also his granddaughter, Earlie Ezell, as defendants.[3]
Spears counterclaimed for abuse of process, his claim arising from the commencement of the second ejectment action.[4] On September 22, 1982, Spears died, and MacMillan revived its ejectment claim against his remaining heirs.[5] The heirs filed a motion for a judgment on the pleadings or, in the alternative, summary judgment, asserting that the prior judgment in the first ejectment action was a bar to the second under the principles of res judicata and collateral estoppel. The trial court granted the motion with the following order:
 "This cause being submitted to the Court on the Defendants' Motion for a Judgment on the Pleadings and/or for a Summary Judgment and being submitted on the pleadings and transcript of the evidence of a former case between the parties, CV-80-032, MacMillan Bloedel, Inc., Plaintiff vs. Azariah Spears, Defendant, the Court finds that by agreement in said former cause the parties agreed to try title to the land in question and agreed for the Court to accept the verdict as advisory on title; that on the complaint of MacMillan Bloedel, Inc., the jury found against MacMillan Bloedel, Inc., and for Azariah Spears and on the counterclaim of Azariah Spears found for Azariah Spears and against MacMillan Bloedel, Inc., and assessed damages of *Page 495 
[Six] Thousand [$6,000.00] Dollars against MacMillan Bloedel, Inc.; that the only theory under the evidence by which Azariah Spears could have received a verdict and a money judgment against MacMillan Bloedel, Inc., was that he owned the title to the land and timber in question; that the trial of the cause fully covered and adjudicated the issues of title; that the verdict of the jury and judgment of the Court was the result of the adjudication of title to this property; and that the Plaintiff, MacMillan Bloedel, Inc., having agreed to try title, having tried title and having received an adverse verdict is now collaterally estopped from seeking to recover this land.
 "It is therefore ORDERED and ADJUDGED that the Plaintiff go hence and that judgment be and is entered for the Defendants and that the Defendants have and recover of the Plaintiff the cost of Court in this behalf expended, for which let execution issue."
MacMillan appeals. We affirm.
Relying on § 6-6-298, Ala. Code 1975, MacMillan contends that it should be allowed to retry the issue of title in a second ejectment action. We disagree.
Section 6-6-298 reads as follows:
 "Two judgments in favor of the defendant in an action of ejectment or in an action in the nature of an action of ejectment between the same parties in which the same title is put in issue are a bar to any action for the recovery of the land, or any part thereof, between the same parties or their privies founded on the same title."
At common law, ejectment is a purely possessory action. 25 Am.Jur.2d Ejectment § 1 (1966). It originated in the English courts and provided for the recovery of damages for the wrongful ejectment or ouster of one who had a term of years in land. It evolved into a remedy not only for the recovery of damages, but also possession of land affected by tenancies for years, and later, by the introduction of certain fictions, was enlarged by the courts to provide a means for one claiming the title to a freehold to recover possession.
As it was originally a term which was to be recovered by the judgment in ejectment, it was necessary that a term be created and, as the injury complained of, by definition, was the loss of possession, it was also necessary that the person to whom the term was given should be ejected from the land. Consequently, the claimant of a freehold was required to enter upon the land and execute a lease to a friend for a term of years. This friend then brought an action in ejectment and proved his entry under the lease and his ouster by the tenant in possession. Since the friend's claim under the lease could only be founded upon the title of the claimant, it was necessary for him to prove the claimant's title in the land in order to obtain a verdict. The claimant's title was thus determined. The writ of possession was issued in the friend's name, but as he had prosecuted the action only as the agent of the claimant, he would immediately give up possession to him.
Later, the fiction of casual ejector was set up, and it became the practice for the claimant of a freehold who desired to establish his title and recover the possession of land in this form of action to enter upon the land and there execute a lease to some friend (lessee) and leave him in actual possession, the lessee remaining there until some other friend, called the "casual ejector," came and turned him out. For this injury, the lessee brought his action against the "casual ejector," who was bound, under a rule of court, to give notice to the tenant in possession that he had been sued and would make no defense, and that unless the tenant in possession should defend, he would be turned out. This served as process to the tenant in possession, who then appeared and defended by permission of the court and became the real defendant in the suit. Subsequently, the lease and the parties — the plaintiff (lessee) and the casual ejector — became fictitious. The tenant in possession, as a condition of being allowed to appear and defend, was required to enter into what was called *Page 496 
"the consent rule," whereby he agreed to confess the lease, entry, and ouster, and to plead not guilty. This requirement obviated the necessity of proof on the points admitted and left the parties at the trial with only the claimant's title to be determined.
The effect of a judgment in ejectment at common law was originally to award possession to one who had a term of years in land; therefore, there was no limit to the number of actions which could be brought to recover the possession of the same land. Furthermore, the evolution of ejectment into a method for the claimant of a freehold to litigate his legal title and thereby recover the possession did not serve to add finality to the judgment. Each such action was based upon the fiction of a different lease, entry, and ouster, and, as the fictitious parties and the cause of action were not the same, the determination of the title was technically not within the principles of res judicata. While the difference between the parties was only nominal and in the cause of action only technical, courts nevertheless refused to apply the general principles of res judicata to such actions, supposedly because, by the common law of England, the title and right to the possession of the land were regarded with special favor, and it was thought that such important rights should not be finally determined in one action. Adams on Ejectment, pp. 1-17, 351; W. Blackstone, Commentaries on the Laws of England, Book Three, Chapter 11 (1966); Carr v. Mouzon, 93 S.C. 161, 76 S.E. 201
(1912). For these reasons, the judgment in ejectment at common law is never considered final. Camp v. Forrest, 13 Ala. 114
(1848); Pritchard v. Fowler, 171 Ala. 662, 55 So. 147 (1911); 25 Am.Jur.2d Ejectment § 125 (1966).
The legislature in Alabama, in an effort to find a capable and efficient substitute for the common law action in ejectment, which, as shown, is enveloped in fictions, enacted the statutory provisions now codified at § 6-6-280, Ala. Code 1975, which reads as follows:
 "(a) A plaintiff commencing an action for the recovery of lands or the possession thereof has an election to proceed by an action of ejectment or by an action in the nature of an action of ejectment as is provided in subsection (b) of this section.
 "(b) An action for the recovery of land or the possession thereof in the nature of an action in ejectment may be maintained without statement of any lease or demise to the plaintiff or ouster by a casual or nominal ejector, and the complaint is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same. This action must be commenced in the name of the real owner of the land or in the name of the person entitled to the possession thereof, though the plaintiff may have obtained his title thereto by a conveyance made by a grantor who was not in possession of the land at the time of the execution of the conveyance thereof. The plaintiff may recover in this action mesne profits and damages for waste or any other injury to the lands, as the plaintiff's interests in the lands entitled him to recover, to be computed up to the time of the verdict. (Code 1852, §§ 2209, 2210; Code 1867, §§ 2610, 2611, 2621; Code 1876, §§ 2959, 2960, 2970; Code 1886, §§ 2695, 2696; Code 1896, §§ 1529, 1530; Code 1907, §§ 3838, 3839; Code 1923, §§ 7453, 7454; Code 1940, T. 7, §§ 937, 938.)"
See Henry v. Thorpe, 14 Ala. 103 (1848); Alabama State Land Co.v. Matthews, 168 Ala. 200, 53 So. 174 (1910). Clay's Digest, p. 320, §§ 43, 44, 45, 46.
The alternate form of action prescribed in subsection (b) is, in effect, an action of ejectment as at common law, only stripped of the cumbersome forms and fictions which are characteristic of that form of action. Lomb v. Pioneer Savings Loan Co., 106 Ala. 671, 17 So. 670 (1895). It is possessory in nature, as is its common law counterpart. Therefore, it remains incumbent upon the plaintiff to prove a right *Page 497 
to possession at the time of the commencement of the action.State v. Broos, 257 Ala. 690, 60 So.2d 843 (1952); Betz v.Mullin, 62 Ala. 365 (1878); Salter v. Fox, 191 Ala. 34,67 So. 1006 (1915). The plaintiff may allege and prove that he either has the legal title to, or was possessed of, the land and that the defendant entered thereupon and unlawfully withholds and detains it. Atlas Subsidiaries of Florida, Inc. v. Kornegay,288 Ala. 599, 264 So.2d 158 (1972).
As at common law, the plaintiff must prevail on the strength of his own legal title or claim to possession and not on the weakness of the defendant's. Miller v. Jones, 280 Ala. 612,196 So.2d 866 (1967). Although he may, the defendant is not required to show legal title or a right to possession in himself. Therefore, even against one with no title or right to possession, the plaintiff cannot prevail unless he meets his burden of proof. 25 Am.Jur.2d Ejectment § 19 (1966).
Section 6-6-298, supra, changed the common law rule that a judgment in ejectment is never final by making two judgments in favor of a defendant a bar to further action by the plaintiff for the recovery of the possession of the land. Williamson v.Mayer Bros., 117 Ala. 253, 23 So. 3 (1898). Its purpose is to limit to two the number of actions that can be brought by an unsuccessful party to recover the possession of the land, whereas the common law placed no limit upon such actions.Reynolds v. Henson, 277 Ala. 424, 171 So.2d 240 (1965). However, the legislature's elimination of the fictions, which, as they developed at common law, precluded the finality of a determination of the legal title, has allowed the simplified form of an action in the nature of ejectment to develop in Alabama, not only as an efficient means for the adjudication of the right to possession, but also as a favored action for the trial of the legal title to land, that action being similar in nature to both an action in trespass and an action to quiet title. Kelley v. Mashburn, 286 Ala. 7, 236 So.2d 326 (1970);McCormick v. McCormick, 221 Ala. 606, 130 So. 226 (1930); Vaskov. Jardine, 346 So.2d 962 (Ala. 1977); Findlay v. Hardwick,230 Ala. 197, 160 So. 336 (1935).
In the present case, MacMillan alleged in the first ejectment action that it had the legal title to the land in question. Spears counterclaimed for damages in trespass, alleging that he had the title. The verdict and judgment in the first action were rendered against MacMillan in its ejectment claim and in favor of Spears on his counterclaim for trespass. MacMillan does not dispute that the issue dispositive of both claims, legal title, was fully litigated and resolved in the first trial. Therefore, it follows that MacMillan should be barred from disputing that title in a subsequent ejectment action, just as it would be had Spears filed his trespass action first, put his legal title in issue, and prevailed. Waldrep v.Goodwin, 348 So.2d 491 (Ala. 1977); see, also, Cooper v.Cooper, 418 So.2d 877 (Ala. 1982).
MacMillan cites us no authority that directly supports its position, but it names six previous decisions of this Court that it contends should be controlling. Frazier v. Malone,387 So.2d 145 (Ala. 1980); Williamson v. Mayer Bros., supra;Stanton v. Government National Mortgage Association,380 So.2d 292 (Ala. 1980); Reynolds v. Henson, supra; McCormick v.McCormick, 221 Ala. 606, 130 So. 226 (1930); and Moore v.McLean, 248 Ala. 9, 26 So.2d 96 (1946). These decisions correctly state Alabama law; however, they are readily distinguishable from the present case.
The Court in Frazier v. Malone, supra, considered an action brought by Ernest Frazier for relief from a previous default judgment in favor of Minnie Malone in a prior action brought by her against him in the nature of an action of ejectment and not a subsequent ejectment action. In McCormick v. McCormick,supra, the Court had before it a subsequent bill for partition of land among tenants in common, rather than a second ejection action. And in Moore v. McLean, supra, McLean filed a bill in equity to establish her claim to certain lands which had previously been the subject of an ejectment action wherein a default judgment had been entered against her. In all three of these previous cases, the Court held the prior judgment in ejectment to be binding. *Page 498 
In Williamson v. Mayer Bros., supra, Stanton v. GovernmentNational Mortgage Association, supra, and Reynolds v. Henson,supra, the Court was concerned with two ejectment actions brought by the same plaintiff against the same defendant for recovery of the same land and, citing either § 6-6-298 or one of its predecessors, refused to give res judicata effect to the first judgment in each case, thus allowing the second action. However, in those cases, contrary to the instant case, there was no actual adjudication of the legal title between the parties in the first action.
Therefore, we hold that § 6-6-298 is not applicable to an action in the nature of an action in ejectment for the recovery of land wherein the issue of the legal title is litigated fully and resolved between the parties.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.
[1] John Bolden was also named as a defendant, but was later dismissed by the trial court. It appears from the record that Bolden was not in possession of or claiming to own any interest in the land.
[2] See § 6-6-280 (b), Ala. Code 1975.
[3] Because of his advanced age, Spears had moved off the land and in with his daughter, Ada Mae Spears Bolden. Earlie Ezell moved into his house, located on the land in question.
[4] This counterclaim was subsequently dismissed by the trial court and is not at issue on this appeal.
[5] The defendants in the present case are Earlie Ezell, Bennie Elmore Spears, Ada Mae Spears Bolden, and C.J. Spears.