PER CURIAM.
The plaintiff, the State of Alabama, appeals a judgment based upon a jury verdict in favor of the defendant, Wilbur Steele. We reverse and render judgment for the State.
The issues arising out of this statutory ejectment action are whether the State proved that it had superior title to the lands in question and whether the verdict of the jury in favor of the defendant was against the great weight of the evidence.
In January 1987, the State commenced a statutory ejectment action pursuant to *193 Code 1975, § 6-6-280, to remove a “house trailer” owned by Wilbur Steele from a certain “lot 2,” to which the State held a warranty deed. The evidence presented to the jury at trial was, in part, as follows: The State introduced an instrument executed in 1879 that was identified as the “Sawyer land division.” This instrument partitioned property along the Tombigbee River into four lots, as follows:
“... 1st Allotted to Miss Emogene B. Sawyer: The N ½ of the N ½ of Sec 33. Township 5. Range 2 E. N ½ of the N ½ of Sec 26 Township 5. Range 2E. NW ⅝ of the NW ¼ of Sec 35 Township 5 Range 2E. And that portion of the River Front contained in the 20 acres in the Fractional NE ¾ of Frac. Sec. 32. Township 5. Range 2 East to commence 450 feet from an embankment on the River bank thrown up by the C.S. Government running north and parallel with the river to the comer where the lines of Sections 32 and 33 intersect at the river margin.
“2nd Allotted to Frank L. Sawyer:
The S ½ of N ½ of Sec 33 Township 5. R 2 East The S ½ of N ½ of Sec 26 Township 5. R 2 East The SW V) of NW ⅛ of Sec 35 Township 5. R 2 East And that portion of the River Front contained in the 20 acres in the Fractional NE ¾ of Fract Sec 32 T 5 R2E to commence 300 feet from an embankment on the River Bank thrown up by the C.S. Government running north and parallel with the river to the 450 feet stake the commencement of No. 1. Also the remainder of the 20 acres after the partition of 4 shares on River Front.
“3rd Allotted to Clarence and Seila Dickinson.
The N ½ of SV2 of Sec 33 Township 5. R 2 East The N ⅝ of S ¾⅛ of Sec 26 Township 5. R 2 East The SE ¼ of NW ¼ of Sec 35 Township 5. R 2 East And that portion of the River Front contained in the 20 acres in the Fractional NE ⅞ of Fract Sec 32. T5 R2E to commence 150 feet from an embankment on River Bank thrown up by the C.S. Government running north and parallel with the river to the 300 feet stake the commencement of No. 2.
“4th Allotted to Julien E. Sawyer
The S ½ of S ½ of Sec 33. Township 5. Range 2 East The S ½ of S ½ of Sec 26 Township 5. Range 2 East The NE ¼ of NW ⅛ of Sec 35 Township 5. Range 2 East And that portion of the River Front contained in the 20 acres in the Fractional NE ¼ of Fract Section 32. Township 5. Range 2 East to commence at an embankment on the river bank thrown up by the C.S. Government running north and parallel with the river to the 150 feet stake the commencement of No. 3.
“Also that the lines of division between the heirs run due east from the respective points or stakes on the river bank to the Section line between Secs 32 & 33 and that each heir or interest have undisputed right of way by most accessible road or route to his or her respective allotted portion of the River Front.”
(Emphasis added.)
The State claimed title to lot 2 through a warranty deed executed in 1944 from Lone Star Cement Corporation to the State, which reads, in part, as follows:
“Beginning at an embankment on the river bank thrown up by the Confederate States Government, thence East to the east line of Section 32, which point is the southeast corner of Lot or Allotment No. 4 in said Section 32, thence north 150 feet, thence west to the river bank, thence in a southerly direction with said river bank to the point of beginning, and being further described as Lot or Allotment No. 4 in said Section 32 of the division of the Sawyer lands in the Probate Court of Clarke County, Alabama, according to the commissioner’s report in Probate Court Record P, at Page 148, and being a part of Section 32, Township 5 North, Range 2 East.
All that part of Section 32, Township 5 North, Range 2 East lying east of the Tombigbee River and north of a line described as follows, said line beginning 300 feet north of the southeast corner of the aforesaid Lot No. 4, said point being *194 the southeast córner of Lot or Allotment No. 2, thence west to the river, being further described as Lots or Allotments No. 1 and No. 2 in said Section 32 of the division of the Sawyer lands in the Probate Court of Clarke County, Alabama, according to the commissioner’s report in Probate Court Record P, at Page 148, and being a part of Section 32, Township 5 North, Range 2 East."
(Emphasis added.)
The State also produced a survey map of lots 2, 3, and 4 prepared in 1985 by a licensed surveyor and engineer, L.J. McMillan.[1] McMillan had 27 years’ experience as a surveyor. McMillan prepared the survey from the description in the 1944 deed and testified that the description of lot 2 in the 1879 Sawyer land division corresponded with the description of lot 2 in the 1985 survey.
The State also produced a warranty deed executed in 1976 from Elizabeth H. La-whon and husband Niles B. Lawhon to the defendant, Wilbur W. Steele, and his wife, Ucal Steele. The description in the defendant’s 1976 deed appears as follows:
“Fractional Section 32, Township 5 North, Range 2 East, to commence 150 feet from an embankment on River bank thrown up by the Confederate States Government, running North and parallel with the river to the 300 foot stake the commencement of Lot No. 2, situated in Clarke County, Alabama. The above property being located on the Tombigbee River.”
Steele presented other deeds in his chain of title that contained the same property description. McMillan testified that the description in Steele’s 1976 deed referred to lot 3 that was described on the 1985 survey map. McMillan also testified that he went to the property and observed that Steele’s house trailer and well encroached on lot 2.
Conrad Wimberly testified for the defendant that he was present in 1971 when Ralph McVay, a licensed surveyor, set out stakes for R.G. Holder (the predecessor to Steele’s grantor in the chain of title) to indicate which property belonged to Holder. Wimberly stated that he was not a licensed surveyor and that he was with McVay only at Holder’s request to observe where the stakes were set. Wimberly testified that the boundaries set by the stakes in 1971 included lots 2 and 3. However, Wimberly did not know if McVay had done a survey.
Robert Steele, the defendant’s son, testified on behalf of Steele because Steele’s doctor would not allow Steele himself to take the stand. Robert Steele testified that his father had intended to have a survey of the property made, but had never had one prepared. On cross-examination, Robert Steele testified that he “suppose^]” that the Steele deed did not include lot 2.
There was also evidence that the State had regularly marked a boundary line between lots 2 and 3 before and after Steele acquired the property and that there had never been a dispute over lots 2 and 3 until the State commenced this statutory ejectment action.
At the close of the evidence, the trial court denied the parties’ respective motions for directed verdict and submitted the case to the jury. The jury found in favor of the defendant, Wilbur Steele, and the State appealed.
The State argues that it clearly and convincingly proved superior title to lot 2 and that the verdict of the jury in favor of Steele was against the overwhelming evidence to the contrary. Steele argues that in a statutory ejectment action the State may recover only by “showing title from a grantor in possession, or superior title from a common source, or by an unbroken chain of title from the government,” and he argues that the State failed to present any evidence in support thereof.
Steele contends that his deed description includes the property referred to as “lot 2” in the 1985 survey map. Steele says that *195 there is no “300 foot stake” labeled as such on the property. Thus, Steele reads his metes and bounds description to mean that the southeast corner of his property is located 150 feet north of the southeast corner of lot 4 (the “embankment”), and that the northeast corner of his property is 300 feet north of the southeast corner of his property. The State contends that the description in Steele’s deed that reads “to the 300 foot stake the commencement of lot No. 2” means that Steele’s northern boundary line is located 300 feet from the embankment, which is 150 feet south of where Steele says it should be located.
This Court has stated, regarding § 6-6-280(b):
“[I]t remains incumbent upon the plaintiff to prove a right to possession at the time of the commencement of the action.... The plaintiff may allege and prove that he either has the legal title to, or was possessed of, the land and that the defendant entered thereupon and unlawfully withholds and detains it.
“As at common law, the plaintiff must prevail on the strength of his own legal title or claim to possession and not on the weakness of the defendant’s_ Although he may, the defendant is not required to show legal title or a right to possession in himself. Therefore, even against one with no title or right to possession, the plaintiff cannot prevail unless he meets his burden of proof.”
MacMillan Bloedell, Inc. v. Ezell, 475 So.2d 493, 496-97 (Ala.1985). (Citations omitted.)
Thus, the State had the burden of proving that it either had the legal title to lot 2, or was possessed of lot 2, and that Steele entered upon lot 2 and unlawfully withheld it and detained it. The State produced the only deed that specifically described lot 2 (the 1944 deed from Lone Star Cement Corporation), and that deed corresponded with the 1879 Sawyer land division descriptions. The surveying expert, McMillan, testified that the State’s deed described lot 2 and that Steele’s deed described only lot 3, as shown on the 1985 survey map. Thus, the State proved superior legal title to lot 2. Furthermore, the evidence that the State had regularly marked the boundary line between lot 2 and 3 shows that the State exercised a visible act of ownership upon the property tending to show a claim of ownership and the extent of possession of lot 2. McMillan also testified that Steele’s house trailer and well encroached on lot 2. Steele did not produce a survey in rebuttal. Steele’s witness, Wimberly, who was not a surveyor or engineer, testified only that he was present when McVay, a licensed surveyor, ran the property lines for Holder and that he did not know if McVay had done a survey.
After a thorough review of the record, we conclude that there was no evidence in favor of Steele and that the State proved by a preponderance of the evidence that it had superior legal title to lot 2; that it had the right to possession of it; and that Steele’s house trailer and well encroached on it. Therefore, the judgment is due to be, and it is hereby, reversed, and a judgment is rendered in favor of the State.
REVERSED AND JUDGMENT RENDERED.
HORNSBY, C.J., and JONES, SHORES, HOUSTON and KENNEDY, JJ., concur.
*196 APPENDIX A
[[Image here]]
The above Survey are Lots 2 and 4 of the Sawyer Estate in Sec. 32 and two (2) acres in Sec. 33, both in T-5-N, ÍÍ-2-E. Clarke County.
This survey was Bade fro» the description furnished by the Departaent of Conservation.
I, L. Junior McMillan, a Registered Land Surveyor in the State of Alabama, certify this is a true plat of ray survey.
[[Image here]]

. See Appendix A to this opinion for the 1985 survey map, which describes the property involved in this opinion.