Rel: February 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2023-0829

_____

## Howard Ross

## v.

## West Wind Condominium Association

## Appeal from Madison Circuit Court
## (CV-22-146)

On Application for Rehearing

MOORE, Presiding Judge.

This court's opinion issued on November 8, 2024, is withdrawn, and the following is substituted therefor.

Howard Ross appeals from a judgment entered by the Madison Circuit Court ("the trial court") in favor of West Wind Condominium Association ("West Wind"). We affirm the judgment in part and reverse the judgment in part.

Procedural History

The history of the litigation between the parties is lengthy and convoluted.[1] The portion of that history pertinent to this appeal is as follows. The West Wind Condominiums consists of two buildings, one containing 10 units, including Unit J, and one containing 12 units, including Unit D. Ross owns Unit D and Unit J. West Wind charges $115 per month for homeowners' dues on each unit; despite repeated demands, Ross has not paid the total dues that have accumulated since 2017.

On November 30, 2018, the building containing Unit D was declared to be unsafe by the City of Huntsville due to an electrical problem, and West Wind was ordered to repair the unsafe building. West

---

[1]See Ross v. West Wind Condo. Ass'n, 153 So. 3d 29 (Ala. Civ. App. 2012), rev'd, 153 So. 3d 43 (Ala. 2014), on remand, 153 So. 3d 52 (Ala. Civ. App. 2014); and Ross v. West Wind Condo. Ass'n, 216 So. 3d 438 (Ala. Civ. App. 2016).

Wind raised the approximately $60,000 needed to pay for the repair work by assessing the owners of the units in the unsafe building. For his part, Ross, as the owner of Unit D, was assessed $4,980, which he did not pay. The repairs were completed, and the City of Huntsville allowed the building to be reoccupied in December 2022.

On August 2, 2021, West Wind filed a complaint against Ross in the Madison District Court ("the district court"), asserting that Ross owed West Wind homeowners' dues for Unit D and Unit J in addition to condominium assessments for Unit D. Following a trial, the district court entered a judgment in favor of West Wind and against Ross in the amount of $7,964.32. On November 28, 2022, Ross timely appealed the district court's judgment to the trial court.

On appeal, West Wind amended its complaint to increase its claim for damages; Ross counterclaimed for lost rent during the period in which the building housing Unit D was uninhabitable and for ejectment. The trial court conducted a bench trial on September 18, 2023. On the following day, the trial court entered a final judgment awarding West Wind $29,267.29, plus interest. On October 14, 2023, Ross filed a

postjudgment motion; the trial court entered an order denying that motion on October 19, 2023. Ross timely appealed.

Standard of Review

"'"When ore tenus evidence is presented, a presumption of correctness exists as to the trial court's findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So. 2d 198 (Ala. 1999); Gaston v. Ames, 514 So. 2d 877 (Ala. 1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court 'will assume that the trial judge made those findings necessary to support the judgment.' Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So. 2d 375, 378 (Ala. 1992). Moreover, '[u]nder the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness.' Transamerica, 608 So. 2d at 378. However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court's judgment. Allstate Ins. Co. v. Skelton, 675 So. 2d 377 (Ala. 1996); Marvin's, Inc. v. Robertson, 608 So. 2d 391 (Ala. 1992); Gaston, 514 So. 2d at 878; Smith v. Style Advertising, Inc., 470 So. 2d 1194 (Ala. 1985); League v. McDonald, 355 So. 2d 695 (Ala. 1978). 'Questions of law are not subject to the ore tenus standard of review.' Reed v. Board of Trustees for Alabama State Univ., 778 So. 2d 791, 793 n.2 (Ala. 2000). A trial court's conclusions on legal issues carry no presumption of correctness

> > on appeal. Ex parte Cash, 624 So. 2d 576, 577 (Ala. 1993). This court reviews the application of law to facts de novo. Allstate, 675 So. 2d at 379 ('[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court's judgment carries no presumption of correctness.')."'

> "[Farmers Ins. Co. v. Price-Williams Assocs., Inc.,] 873 So. 2d [252,] 254-55 [(Ala. Civ. App. 2003)] (quoting City of Prattville v. Post, 831 So. 2d 622, 627-28 (Ala. Civ. App. 2002))."

Kellis v. Estate of Schnatz, 983 So. 2d 408, 412 (Ala. Civ. App. 2007).

## Discussion

### The Assessment

Ross argues that the assessment for the repair work done to the building containing Unit D was invalid because, he says, he did not receive adequate notice of the meeting regarding the assessments, he did not receive notice of the assessment against him, West Wind did not timely file its claim to recover the assessment, and the assessment was not apportioned among the owners of all the units in both buildings of the West Wind Condominiums. We find the last argument to be dispositive, so we do not address the other arguments.

5

The approximately $60,000 assessed against the unit owners in the unsafe building was used primarily to repair common elements, i.e., the parts of the building not contained within any specific unit. Section 35-8A-207(a), Ala. Code 1975, provides, in pertinent part, that a condominium association's declaration "must allocate to each unit in a condominium a fraction or percentage of undivided interests in the common elements and in the common expenses of the association … to each unit and state the formulas used to establish allocations of interest." In accordance with § 35-8A-207(a), Section 6 of West Wind's Declaration provides that "[e]ach unit owner, including the Declarant, is hereby allocated an equal liability for common expenses and an equal share in common surplus."

Sebastian Tarchala, the vice president of West Wind, testified that West Wind had levied assessments against only the owners of the units in the unsafe building because it would not have been fair to the owners of the units in the other building to share in the repair costs for the unsafe building. Section 35-8A-315(c)(2), Ala. Code 1975, provides that, to the extent required by a condominium's declaration, "[a]ny common expense or portion thereof benefiting fewer than all of the units must be assessed

exclusively against the units benefited," and the Commissioner's Commentary to § 35-8A-315 clarifies that "the declaration <u>may</u> provide for assessment on a basis other than the allocation made in [§] 35-8A-207[, Ala. Code 1975,] as to limited common elements, other expenses benefiting less than all units, insurance costs, and utility costs." (Emphasis added.) As discussed above, however, West Wind's Declaration provides that each unit owner is allocated an equal liability for common expenses, and it does not provide for assessments for expenses benefiting fewer than all units.

"A condominium association may exercise its powers only within the constraints of its condominium declaration and bylaws." <u>Lion Square Phase II & III Condo. Ass'n v. Hask</u>, 700 P.2d 932, 934 (Colo. App. 1985). Any assessments levied in violation of the declaration and bylaws are ultra vires.[2] <u>Id.</u> Based on its own declaration and bylaws, West Wind could not levy assessments against only the owners of the units in the unsafe building; thus, the assessment levied against Ross was not valid

---

[2]<u>Black's Law Dictionary</u> 1833 (11th ed. 2019) defines "ultra vires" as: "Unauthorized; beyond the scope of power allowed or granted by a corporate charter or by law."

7

and enforceable. We, therefore, reverse the judgment to the extent that it awarded West Wind damages for Ross's nonpayment of the assessment, which West Wind calculated to be $5,840.12 with late fees and interest.

<u>The Homeowners' Dues</u>

Ross argues that he should not have been found liable for unpaid homeowners' dues because he was not properly notified of the delinquency. Ross does not point to any part of the declaration or bylaws requiring West Wind to notify him of unpaid homeowners' dues. "[I]t is not the duty of the appellate court to search the record for evidence to support an appellant's contention of error." <u>Certain Underwriters at Lloyd's, London v. Southern Nat. Gas Co.</u>, 142 So. 3d 436, 453 (Ala. 2013). At any rate, before West Wind commenced the underlying action to collect the dues, Tarchala sent Ross several notices regarding the unpaid dues, each of which included the current balance, to which Ross responded on March 25, 2021, plainly showing that Ross did receive notice of the unpaid homeowners' dues. Ross complains that those notices were not personally delivered to him or sent via registered or certified mail in accordance with Article IX, Section 1, of West Wind's

8

bylaws, but he has failed to show how that section applies to a notice of unpaid homeowners' dues.[3]

Additionally, to the extent that Ross argues that he did not receive notice of the meeting regarding collection of the homeowners' dues via registered or certified mail in accordance with Article IX, Section 1, of the bylaws, we note that Article III, Section 3, of the bylaws provides for notice of meetings and states, in pertinent part, that "[t]he mailing or delivering of a notice of meeting in the manner provided in this Section shall be considered service of notice." Because it appears that that portion of the bylaws, rather than Article IX, Section 1, which indicates that it applies only "[u]nless otherwise provided" in the bylaws, dictates the manner of notice for meetings, we cannot conclude that any failure

---

[3]Article IX, Section 1, provides, in pertinent part: "Unless otherwise provided in these bylaws, all notices, demands, bills, statements, or other communications under these bylaws shall be in writing and shall be deemed to have been duly given if delivered personally/or, if sent by registered or certified mail, return receipt requested, first class postage prepaid." (Emphasis added.) Ross has not shown that the bylaws require notice of unpaid homeowners' dues.

by West Wind to provide notice of meetings pursuant to Article IX, Section 1, amounts to reversible error.[4]

Ross also argues that West Wind failed to prove the amount of the unpaid homeowners' dues. Tarchala testified that West Wind charges $115 per month per unit for homeowners' dues. Tarchala stated that, according to another officer of West Wind, Ross had not paid any dues on either Unit D or Unit J since 2017, which Ross disputed. West Wind submitted an exhibit detailing the amount of the unpaid homeowners' dues for each unit owned by Ross, along with accumulated late fees and interest. Ross objected to the exhibit on the ground that it was not produced in discovery, but West Wind's counsel argued that the exhibit had been prepared strictly for litigation purposes to aid the court in understanding Tarchala's testimony and that the exhibit was not within the scope of Ross's discovery requests. The trial court overruled the objection and admitted the exhibit.

---

[4]Ross does not present any argument on appeal that West Wind failed to comply with the notice requirements for meetings as outlined in Article III of the bylaws.

On appeal, Ross does not present any legal authority to substantiate his contention that the trial court erred in admitting the exhibit over his objection that it had not been produced in discovery or otherwise provided to him before trial. See Rule 28(a)(10), Ala. R. App. P.; White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008) ("Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived."). Instead, Ross argues that Tarchala's testimony and the exhibit should have been excluded based on the best-evidence rule, see Rule 1002, Ala. R. Evid.; however, Ross did not object on that ground and therefore waived such objection. See Kids' Klub, Inc. v. State Dep't of Hum. Res., 874 So. 2d 1075, 1089 (Ala. Civ. App. 2003) (discussing that a failure to object on grounds different from those stated impliedly waives all other grounds for the objection to the evidence). Ross also complains that West Wind did not corroborate Tarchala's testimony with contemporaneous documents showing that Ross did not pay the monthly homeowners' dues; however, Ross fails to cite any legal authority requiring a party to supply

documentary, as opposed to or in addition to testimonial, evidence of its accounting. See Rule 28(a)(10).

Ross last argues that West Wind was precluded from recovering some of the homeowners' dues by § 35-8A-316(e), Ala. Code 1975, which provides that "[a] lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the full amount of the assessments becomes due." Section 35-8A-316(f), however, provides, in pertinent part, that "[t]his section does not prohibit actions to recover sums for which subsection (a) creates a lien." Because the present action was initiated to recover from Ross amounts allegedly due for unpaid homeowners' dues and not to foreclose an existing lien, we conclude that § 35-8A-316(e) does not apply.

Based on the foregoing reasoning, we hold that the trial court did not err in awarding West Wind damages for unpaid homeowners' dues.

Lost Rents

Ross next argues that the trial court erred in failing to award him damages for lost rents during the period that the unsafe building could not be lawfully occupied or in failing to set off the damages awarded to West Wind by the amount of the lost rents. Upon declaring the building

12

containing Unit D to be unsafe, the City of Huntsville ordered that the building be vacated until it was adequately repaired. As a result, Ross could not lease Unit D, and he testified that he lost rental payments that he otherwise would have collected during the period that the building was uninhabitable.

Section § 35-8A-307(a), Ala. Code 1975, generally provides that a condominium association is responsible for the "maintenance, repair, and replacement of the common elements" and that, if the association is responsible, the association "is liable for the prompt repair thereof." In this case, although there was some dispute as to how the electrical system in the unsafe building was damaged, West Wind ultimately assumed responsibility for repairing the damage; however, West Wind did not immediately repair the damage.

Tarchala testified that, in November 2018, when the City of Huntsville closed the unsafe building and ordered it to be repaired, West Wind did not have sufficient funds to make the repairs. According to Tarchala, West Wind made several unsuccessful attempts to collect the necessary funds from the unit owners before West Wind finally levied assessments. The repair work commenced in 2020, and Tarchala

testified that it took two years to replace the roof and the entire electrical system on the outside of the building and to repair several balconies, the exterior of the building, and the electricity and plumbing related to a laundry facility to meet the code requirements related to each of those repairs. Ross did not dispute that testimony, and, on appeal, he does not explain how the delay in commencing the repair work while attempting to raise the funds for that project violated West Wind's duty to promptly repair the unsafe condition of the building.

It was undisputed that, during the period the unsafe building was vacated, several unit owners sold their units to a limited-liability company owned by Tarchala. Ross theorizes that West Wind's officers conspired with Tarchala to delay the repair work so that he could pressure the unit owners into selling their units at unconscionably low prices. Ross testified that Tarchala offered to purchase Unit D for $8,000, although Ross estimated that it was worth $80,000. Tarchala testified that his limited-liability company paid "fair market value" for the units it purchased. Tarchala explained that some unit owners did not want to contribute to the costs of repairing the unsafe building and had opted to sell their units instead. The trial court heard the conflicting evidence

14

and implicitly determined that West Wind had not violated its statutory duty to promptly repair the unsafe building or that it had done so for nefarious reasons. Based on our standard of review, we are bound by that determination. See Kellis, supra.

We conclude that the trial court did not err in denying Ross's counterclaim for lost rents or in failing to set off the amount of the lost rents against the damages awarded to West Wind.

The "Joinder" Argument

Ross next argues that the trial court erred in failing to "join" the underlying action with other pending actions. Ross cites Rule 19, Ala. R. Civ. P., which addresses joinder of persons needed for just adjudication. We acknowledge that Ross asserted in motions filed on May 4, 2023, and July 14, 2023, that he was an "indispensable party" in separate pending actions; however, Ross did not request the joinder of additional parties in the underlying action at any time. Ross's references to Rule 19 and caselaw discussing the operation of that rule have no bearing on the case. It appears that, in substance, Ross is asserting on appeal that the underlying action should have been consolidated with the other pending actions pursuant to Rule 42, Ala. R. Civ. P., or that the other actions

15

should have been enjoined from proceeding without him; however, Ross again fails to present any legal argument supporting those contentions. See Rule 28(a)(10). Accordingly, the "joinder" argument does not merit reversal of the trial court's judgment.

## Ejectment

Finally, Ross argues that the trial court erred in denying his counterclaim for ejectment, which he filed in February 2023. In that counterclaim, Ross alleged that he was the owner of a third unit in the West Wind Condominiums, Unit K, and that West Wind was leasing that unit in contravention of his ownership rights. Ross sought to eject West Wind from the premises. The trial court denied the ejectment claim, concluding that Ross should file a claim to quiet title to Unit K.

Ross asserts that the trial court erred in concluding that a claim to quiet title was appropriate to address the ownership of Unit K because, he says, to quiet title to property, a claimant must be in possession thereof and he had never been in possession of Unit K. See Ala. Code 1975, §§ 6-6-540 and 6-6-560. Although we agree with Ross that he could not have proceeded with a claim to quiet title to Unit K when he was not in possession thereof, this court "may affirm a judgment, or a portion of

16

a judgment, that is correct for any reason." McConico v. Patterson, 204 So. 3d 409, 415 (Ala. Civ. App. 2016).

Ross's claim for ejectment is governed by Ala. Code 1975, § 6-6-280, which provides for the recovery of lands or the possession thereof. In State v. Steele, 560 So. 2d 192, 195 (Ala. 1990), our supreme court stated, in pertinent part:

> "This Court has stated, regarding [Ala. Code 1975,] § 6-6-280(b):
>
>> "'[I]t remains incumbent upon the plaintiff to prove a right to possession at the time of the commencement of the action.... The plaintiff may allege and prove that he either has the legal title to, or was possessed of, the land and that the defendant entered thereupon and unlawfully withholds and detains it.
>>
>> "'As at common law, the plaintiff must prevail on the strength of his own legal title or claim to possession and not on the weakness of the defendant's.... Although he may, the defendant is not required to show legal title or a right to possession in himself. Therefore, even against one with no title or right to possession, the plaintiff cannot prevail unless he meets his burden of proof.'
>
> "MacMillan Bloedell, Inc. v. Ezell, 475 So. 2d 493, 496-97 (Ala. 1985). (Citations omitted.)"

(Emphasis added.)

17

In this case, Ross did not present any evidence indicating that West Wind was unlawfully withholding and detaining Unit K at the time he filed his ejectment counterclaim. Tarchala testified that his limited-liability company had purchased Unit K approximately nine months before the September 18, 2023, trial without any knowledge that Ross claimed an ownership interest in the unit and that his limited-liability company, not West Wind, had been leasing the unit to a resident. Ross did not satisfy his burden of proof on his ejectment claim against West Wind under the circumstances. Accordingly, we affirm the denial of Ross's claim for ejectment against West Wind.

## Conclusion

We reverse the trial court's award insofar as it awarded West Wind damages for Ross's failure to pay the assessment, which we have concluded was improperly apportioned amongst less than all the unit owners of both buildings, and we remand the case to the trial court to recalculate the amount of its judgment. Otherwise, the trial court's judgment is affirmed.

APPLICATION GRANTED; OPINION OF NOVEMBER 8, 2024, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, Fridy, and Lewis, JJ., concur.